# United States Court of Appeals
# for the Federal Circuit

---

**JOHN D. WILSON, JR.,**
*Claimant-Appellant,*

v.

**SLOAN D. GIBSON,**
**Acting Secretary of Veteran Affairs,**
*Respondent-Appellee.*

---

2013-7037

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-0165, Judge Lawrence B. Hagel.

---

Decided: June 10, 2014

---

JOHN D. WILSON, JR., of Zephyr Hills, Florida, pro se.

KATY M. BARTELMA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, and JEANNE E. DAVIDSON, Director. Of counsel were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and RACHAEL T. BRANT, Attorney, United States Department of Veteran Affairs, of Washington, DC.

---

Before MOORE, CLEVENGER, and O'MALLEY,
*Circuit Judges.*

CLEVENGER, *Circuit Judge.*

John David Wilson, Jr. appeals from the final decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the decision of the Board of Veterans' Appeals ("Board") denying him a waiver of compensation overpayment in the amount of $15,464.50. *Wilson v. Shinseki*, No. 11-0165 (Vet. App. Aug. 28, 2012) ("*Mem. Op.*"). The Veterans Court upheld the validity of the overpayment debt and found no clear error in the Board's findings that Mr. Wilson did not qualify for waiver. *Id.* at 6.

Mr. Wilson timely appealed to this court. He presents three issues. First, he challenges the validity of the overpayment debt. Second, he contends that the Board erred in denying him waiver of overpayment. And third, he presents a clear and unmistakable error claim for entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities ("TDIU"). For the reasons set forth below, we affirm the decision of the Veterans Court on the first issue and dismiss for want of jurisdiction on the other two issues.

I

Mr. Wilson served the Navy honorably from January 1986 to January 1990 and again from January 1992 to March 1994. He was given a 70% disability rating for several service-connected physical conditions.

On June 27, 2001, Mr. Wilson was found guilty by a jury in the 13th Judicial Circuit Court of Florida of two felonies: attempted first degree murder with a firearm and aggravated battery with a firearm. He was sentenced to two concurrent life sentences on October 10, 2001, at

which time he was incarcerated. He began to serve his sentences on October 19, 2001. The Second District Court of Appeal of Florida affirmed per curiam Wilson's convictions and sentences on July 9, 2003. *Wilson v. State*, No. 2D01-4868, 853 So.2d 424 (Fla. Dist. Ct. App. 2003). The mandate issued on September 10, 2003.

Mr. Wilson then pursued collateral attacks against his conviction. On February 1, 2005, the Florida Second District Court of Appeal denied his state petition for writ of habeas corpus, *Wilson v. State*, No. 2D04-3354, 896 So.2d 761 (Fla. Dist. Ct. App. 2005), and on February 16, 2005, the Florida Supreme Court declined review. *Wilson v. State*, No. SC05-274, 895 So.2d 1068 (Fla. 2005). Petitioning the United States District Court for the Middle District of Florida fared no better. *Wilson v. Sec'y, Dep't of Corr.*, No. 8:07-cv-2185, 2009 WL 2900716 (M.D. Fla. Sept. 4, 2009). The United States Supreme Court ultimately denied his petition for certiorari on October 4, 2010. *Wilson v. McNeil*, 131 S. Ct. 249 (2010).

For veterans who have service-connected disabilities rated at 20% or more and who are "incarcerated . . . for a period in excess of sixty days for conviction of a felony," 38 U.S.C. § 5313(a)(1) requires a reduction in compensation payment to the level of 10% disability, effective "the sixty-first day of such incarceration." 38 U.S.C. §§ 1114(a), 5313(a)(1)(A). Mr. Wilson notified the Department of Veterans Affairs ("Agency") that he was incarcerated on April 7, 2000, before he was sentenced. The Agency did not receive notification of his actual conviction of a felony until February of 2002.

On February 26, 2002, the Agency informed Mr. Wilson by letter that his rate of compensation would be reduced from 70% to 10%, effective back to December 20, 2001, the sixty-first day of his incarceration dating from October 19, 2001. It then sought overpayment in the amount of $15,464.50. Mr. Wilson applied for a waiver of

the overpayment from the Regional Office Committee on Waivers and Compromises, which was denied.

In addition, on February 27, 2012, Mr. Wilson was denied an application for a TDIU rating by the Regional Office on the basis that his unemployability was due to his incarceration and not due to disability.

## II

Mr. Wilson appealed to the Board, seeking waiver of the overpayment and a TDIU rating. *In re Wilson*, No. 03-28 094 (Bd. Vet. App. Sept. 17, 2007) ("*First Board Op.*"). The Board applied the multi-factor test set forth in 38 C.F.R. § 1.965 to determine that the recovery of the overpayment debt would not be against "equity and good conscience." *Id.* at 9-11. Accordingly, it denied waiver of overpayment. The Board further found that Mr. Wilson was not entitled to a TDIU rating because of evidence that "employment was realistic and feasible" before his incarceration and that "[his] unemployment is due to incarceration and is not the result of his service-connected disabilities." *Id.* at 7.

Mr. Wilson challenged the Board's decision at the Veterans Court on the waiver of overpayment issue and his TDIU claim. By joint motion, with Mr. Wilson represented by counsel, the parties sought remand to the Board to take further evidence on the issue of undue hardship regarding the waiver issue. The parties however expressly asked the Veterans Court "not to disturb" the part of the Board decision that denied Mr. Wilson's TDIU claim. On November 18, 2009, the Veterans Court entered an order remanding the case to the Board according to the joint remand request and dismissing the TDIU claim. On remand, the Board considered all the evidence and again denied waiver of overpayment. *In re Wilson*, No. 03-28 094 (Bd. Vet. App. Dec. 10, 2010).

Mr. Wilson again appealed to the Veterans Court. He challenged the validity of the overpayment debt on the ground that his conviction of a felony for which he was incarcerated should not be deemed to occur until the conviction is absolutely final, that is, the date upon which he was denied review of the conviction by the United States Supreme Court, which occurred on October 4, 2010. His challenge raised a question of interpretation of 38 U.S.C. § 5313, the statute pursuant to which his compensation benefits were reduced on account of his incarceration for conviction of a felony. According to Mr. Wilson's view of the statute, his compensation could not be reduced until his conviction was final, and consequently he is entitled to retain the compensation payments subject to the claim of overpayment. Mr. Wilson also challenged the Board's refusal to grant him a waiver of the overpayment debt.

In a single judge memorandum, the Veterans Court affirmed the conclusions of the Board. *Mem. Op.* at 1. The Veterans Court first concluded that the debt was valid. It stated that Mr. Wilson's status under § 5313(a)(1) as "incarcerated . . . for conviction of a felony" is "without regard to whether [he] has appealed his conviction." *Id.* at 5. The Veterans Court also held that there was no clear error in the factual findings of the Board with regard to the denial of waiver.

Mr. Wilson subsequently sought reconsideration of the adverse decision of the single judge or, in the alternative, a panel decision from the Veterans Court. The Veterans Court granted his motion for a panel decision, which maintained the single-judge memorandum decision as the decision of the court. *Wilson v. Shinseki*, No. 11-0165 (Vet. App. Nov. 14, 2012).

## III

As noted above, Mr. Wilson's appeal to this Court raises three issues: (1) his view of 38 U.S.C. § 5313, which

would begin reduction of disability benefits on account of incarceration for conviction of a felony on the date when a conviction is final; (2) his claim that the Board incorrectly assessed the factors governing waiver of overpayment; and (3) his TDIU claim. We address these issues in turn below.

Our jurisdiction over appeals from the Veterans Court is limited. We have "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under [§ 7292], and to interpret constitutional and statutory provisions to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). We may not review factual determinations or the application of law or regulation to a particular set of facts, unless a constitutional issue is presented. § 7292(d)(2).

IV

38 U.S.C. § 5313(a)(1) states in relevant part,

> . . . any person who is entitled to compensation . . . and who is *incarcerated* in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days *for conviction of a felony* shall not be paid such compensation . . ., for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends, in an amount that exceeds . . . in the case of a veteran with a service-connected disability rated at 20 percent or more, the rate of compensation payable [for a service-connected disability rated at 10 percent] . . . .

(emphases added).

The Veterans Court provided the following construction of the provision:

> the beginning of the period of incarceration re-ferred to in 38 U.S.C. § 5313(a)(1) is calculated without regard to whether the veteran has ap-pealed his conviction

*Mem. Op.* at 5. Accordingly, the Veterans Court sustained the Board's conclusion that Mr. Wilson was "incarcerated . . . for conviction of a felony" as of October 19, 2001.

Before the Veterans Court, Mr. Wilson argued that a conviction is final under § 5313(a)(1) only after exhaustion of federal habeas corpus relief. On appeal, he urges the same construction of "conviction," and alternatively argues that a conviction is final after issuance of the mandate by a state court denying direct appellate review of a felony conviction.

Mr. Wilson asserts that § 5313(a)(1) must contem-plate the right to appeal a conviction, directly and collat-erally, through the writ of habeas corpus. He points to the fact that a final state court judgment is a prerequisite to habeas corpus review, *see* 28 U.S.C. §2244(d)(1)(A), and from that fact argues that reduction of compensation under 38 U.S.C. § 5313(a)(1) should proceed only follow-ing entry of a final judgment of conviction of a felony. Of course nothing in § 5313(a)(1) prevents the right to appeal a conviction, and there is no reason why the requirements for perfection of habeas corpus review should have any relevance to the statutory determination by Congress that compensation benefits should be reduced upon incarcera-tion for conviction of a felony.

The plain language of the statute undeniably supports the interpretation of the Veterans Court that reduction of compensation under § 5313(a)(1) depends only upon incarceration for a period in excess of sixty days for con-viction of a felony, not upon the conviction becoming final in state courts, or after complete exhaustion of post-conviction review opportunities. First, the plain language of the statute requires only a "conviction," not a "final

conviction." A "conviction" is "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty," or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." BLACK'S LAW DICTIONARY 358 (8th ed. 2004). In the criminal law setting, the ordinary meaning of "conviction" is a trial determination of guilt, without regard to whether the conviction is appealed. When Congress wants to trigger events upon a final conviction, it knows how to do so, and does so explicitly. *See, e.g.*, 5 U.S.C. § 8332(o)(3), (6) (barring federal retirement benefits following the "final conviction" of certain offenses and defining "final conviction" to refer to cases in which appeal rights have expired or been exhausted); 10 U.S.C. § 12312(a)(2) (providing for involuntary release from military service if a service-member "is convicted and sentenced to confinement . . . and the sentence has become final"); 38 U.S.C. § 2411(b)(1)-(2) (barring interment in a national cemetery of a person who has been convicted of a Federal or State capital crime "and whose conviction is final"). Accordingly, there is no basis for importing the requirement of final conviction into 38 U.S.C. § 5313(a)(1).

Second, the plain language of the statute states that a person incarcerated on a felony conviction "shall not be paid [the full amount of benefits] . . . for the period beginning on the sixty-first day of such incarceration." § 5313(a)(1). This language mandates that the reduction of compensation be based on, and measured from, a date of incarceration, not from a date upon which a person had exhausted all available post-conviction avenues of relief. Mr. Wilson's theory of the statute needs the statute to say that the incarcerated person not be paid the full amount of benefits "for the period beginning on the sixty-first day of incarceration after the conviction becomes final." The plain language keys the reduction of compensation to an incarceration date without regard to whether post-conviction review is pursued.

The Secretary's implementing regulation for § 5313(a)(1) also reads the statute to begin reduction of compensation following incarceration for a felony conviction. In particular, the regulation specifies reduction of benefits following incarceration for a felony conviction, and specifically provides that "[i]f a conviction is overturned on appeal, any compensation . . . withheld under this section . . . shall be restored to the beneficiary." 38 C.F.R. § 3.665(m). The regulation does not contemplate full payment of benefits while post-conviction relief is sought, as Mr. Wilson claims. Instead, the regulation contemplates reduction of benefits on the sixty-first day of incarceration for a felony conviction, and restoration of full benefits after successful post-conviction review.

The statute will not bear the weight of Mr. Wilson's argument. Reduction of compensation benefits begins on the sixty-first day of incarceration for a felony conviction, regardless of whether post-conviction judicial review is sought. We therefore affirm the statutory construction of the Veterans Court, and reject Mr. Wilson's contention that the overpayment amount is invalid.

## V

Mr. Wilson's challenge to the Board's failure to grant him a waiver of compensation overpayment goes to the facts of the case, as they line up against the standards by which a waiver request is measured, which are set forth in the Secretary's regulations at 38 C.F.R. § 1.965. Mr. Wilson does not challenge the legality of those standards, but instead argues that he should have prevailed under them. He thus asks us to reweigh the facts, an exercise beyond our jurisdictional reach. *See* 38 U.S.C. § 7292(d)(2). We therefore dismiss his appeal of the denial of his waiver request.

## VI

Mr. Wilson's request that we greet and decide his TDIU claim frankly admits that this matter was not reached and decided in the Veterans Court decision from which he appeals. Wilson Brief at 3. As noted above, the TDIU claim was alive on Mr. Wilson's first appeal from the Board to the Veterans Court. In that appeal, a joint remand request was granted, but a joint request of dismissal of the TDIU claim was also granted. The dismissal of the TDIU claim is final and not subject to review on this appeal. There is no TDIU issue in the decision on appeal. With nothing to adjudicate, we dismiss Mr. Wilson's TDIU claim for want of subject matter jurisdiction. *Guillory v. Shinseki*, 669 F.3d 1314, 1320 (Fed. Cir. 2012).

**AFFIRMED-IN-PART AND DISMISSED-IN-PART**

COSTS

No costs.