# United States Court of Appeals for the Federal Circuit

---

**DONALD L. MULDER,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2014-7137

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 12-1222, Judge Lawrence B. Hagel, Judge Margaret C. Bartley, Judge William A. Moorman.

---

Decided: November 12, 2015

---

TRAVIS JAMES WEST, Pia Anderson Dorius Reynard & Moss, Milwaukee, WI, argued for claimant-appellant.

EMMA BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; Y. KEN LEE, AMANDA BLACKMON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

This case arises from a decision by the Department of Veterans Affairs (VA) reducing the disability compensation of Donald L. Mulder (Mr. Mulder) after he was incarcerated as a result of a felony conviction. The Board of Veterans' Appeals (Board) found that, under 38 U.S.C. § 5313(a)(1), the VA properly determined the date on which Mr. Mulder's benefits should be reduced. The United States Court of Appeals for Veterans Claims (Veterans Court) affirmed, *Mulder v. Gibson*, 27 Vet. App. 10 (2014), and Mr. Mulder appealed. For the reasons set forth below, we agree with the Veterans Court that the VA should use the date on which Mr. Mulder pleaded guilty and was convicted when calculating the date on which to reduce his benefits.

BACKGROUND

I

Mr. Mulder served in the United States Army for three separate periods between 1982 and 1994, collectively accumulating approximately two years of honorable service. In 1998, the VA issued a decision assigning Mr. Mulder a 50% disability rating for two service-connected conditions.

In 2005, Mr. Mulder was arrested and charged with two felony counts. On July 11, 2005, at his initial appearance in Wisconsin Circuit Court for Milwaukee County, the judge set Mr. Mulder's bail at $750,000.00. Because Mr. Mulder was unable to post bail, he remained in custody pending trial.

On May 19, 2006, Mr. Mulder pleaded no contest to one of the two felony charges and the State of Wisconsin

dismissed the second. That same day, the court found him guilty and ordered that judgment of conviction be entered on the record. The court then remanded Mr. Mulder into custody and scheduled his sentencing hearing.

On June 16, 2006, the court sentenced Mr. Mulder to a prison term of fourteen years, six months. The court ordered that Mr. Mulder would serve an initial term of confinement of eight years, six months, followed by six years of supervised release. In addition, the court gave Mr. Mulder credit for the 384 days he was in custody awaiting the conclusion of his criminal proceedings. The court then entered judgment of conviction listing this sentence and specifying May 19, 2006, as the "Date(s) Convicted." Joint Appendix (J.A.) 198.

## II

The VA has a statutory obligation to reduce benefits payments if the recipient is "incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony." 38 U.S.C. § 5313(a)(1). If the recipient's disability rating exceeds 20%, § 5313(a)(1)(A) requires that the compensation is reduced to 10%. *See* 38 U.S.C. § 1114(a). The reduction in compensation "begin[s] on the sixty-first day of such incarceration and end[s] on the day such incarceration ends." 38 U.S.C. § 5313(a)(1).

In July 2007, as required by § 5313(a)(1), the VA sent a letter to Mr. Mulder explaining that his felony conviction and resulting incarceration required the VA to reduce the amount of Mr. Mulder's disability compensation. The letter notified Mr. Mulder that the reduction would be effective on July 19, 2006, the sixty-first day following his May 19, 2006 felony conviction. The letter also stated that Mr. Mulder's disability benefits could be restored to his original 50% rating after he was no longer incarcerated.

Mr. Mulder responded to the VA by objecting to the reduction and asserting that his sentence had been vacated. In fact, while Mr. Mulder had pursued various forms of post-conviction relief, these proceedings resulted only in minor re-calculations of his sentence. Although each re-calculation required his sentence to be vacated and re-imposed, Mr. Mulder's no contest plea and corresponding conviction were neither reversed nor vacated, and he was not released from incarceration. Accordingly, the VA implemented the proposed rating reduction.

### III

Mr. Mulder filed a Notice of Disagreement and ultimately appealed to the Board. The Board found that July 19, 2006, was the sixty-first day after Mr. Mulder entered his no contest plea and was found guilty, and thus was the correct date for the VA to reduce Mr. Mulder's benefits.

Mr. Mulder appealed to the Veterans Court, arguing that the causal link between his incarceration and his felony conviction did not exist until he was sentenced to a term of imprisonment. According to Mr. Mulder, before his sentence was imposed, he was incarcerated under the Wisconsin bail statute, Wis. Stat. § 969.01, rather than "for conviction of a felony," as required by § 5313(a)(1). In other words, Mr. Mulder argued that between his 2005 arrest and his June 16, 2006 sentencing hearing, he was incarcerated solely because he was unable to post bail. Mr. Mulder thus asserted that his compensation should not have been reduced until the sixty-first day after the June 16, 2006 sentencing hearing, which was twenty-eight days after he pleaded guilty.

The Veterans Court rejected this argument. Specifically, the Veterans Court determined that § 5313(a)(1) imposed four elements that must be met before the VA must reduce a veteran's compensation: "(1) incarceration in a penal institution; (2) for a period in excess of 60 days;

(3) a conviction; and (4) a felony." *Mulder v. Gibson*, 27 Vet. App. at 14. The Veterans Court concluded that when Mr. Mulder pleaded no contest, each of these four elements was present. The Veterans Court therefore rejected Mr. Mulder's arguments and affirmed the VA's decision to base the effective date for the reduction of Mr. Mulder's benefits on the date of his no contest plea. Mr. Mulder appealed to this court.

## DISCUSSION

Our review of appeals from the Veterans Court is limited by statute to determining "the validity of a decision of the [Veterans Court] on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . ." 38 U.S.C. § 7292(a). We review the Veterans Court's interpretation of a statute de novo. *Sursely v. Peake*, 551 F.3d 1351, 1354 (Fed. Cir. 2009). We must also decide "all relevant questions of law" and will "set aside any regulation or any interpretation thereof (other than a determination as to a factual matter)" relied upon in the decision of the Veterans Court that we find "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." 38 U.S.C. § 7292(d)(1).

## I

Statutory interpretation begins with the words of the statute. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* (internal quotation marks omitted). This inquiry "ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted).

The VA reduced Mr. Mulder's disability compensation pursuant to 38 U.S.C. § 5313(a)(1),[1] which provides that

> any person who is entitled to compensation or to dependency and indemnity compensation and who is incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of sixty days for conviction of a felony shall not be paid such compensation or dependency and indemnity compensation, for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends, in an amount that exceeds . . . in the case of a veteran with a service-connected disability rated at 20 percent or more, the rate of compensation payable [for a service-connected disability rated ten percent] . . . .

Thus, according to the plain language of the statute the VA must reduce a veteran's compensation when the veteran is (1) "incarcerated in a . . . penal institution"; (2) "for a period in excess of sixty days"; (3) "for conviction of"; (4) "a felony." Mr. Mulder concedes that the offense to which he pleaded no contest was a felony under Wisconsin law. Mr. Mulder also does not dispute that his no contest

---

[1]    The VA implemented this statute in 38 C.F.R. § 3.665. Because we rely only on the plain language of the statute, we need not consider whether this regulation is entitled to deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). Further, as both parties recognize, however, the regulation essentially "parrots" the statutory language; it does nothing to interpret or elaborate. As such, any interpretation of this regulation by the VA is not entitled to deference. *See Haas v. Peake*, 525 F.3d 1168, 1186–87 (Fed. Cir. 2008). We therefore refer only to the statutory language appearing in 38 U.S.C. § 5313(a)(1).

plea constitutes a conviction.  Instead, Mr. Mulder argues that the VA erroneously calculated the date on which his benefits should be reduced based on his conviction date, rather than using the date of his sentencing.  To that end, Mr. Mulder contends that the necessary causal link between his incarceration and felony conviction was not present until he was actually sentenced to a term of imprisonment exceeding sixty days.  Thus, to resolve this appeal, we need determine only whether Mr. Mulder was "incarcerated . . . *for* conviction of a felony," beginning on the date he pleaded guilty, as the VA contends, or whether the requisite causal link was absent until the date of his sentencing, as Mr. Mulder contends.

In considering whether we should read the word "conviction" in § 5313(a)(1) to mean "sentencing," we must examine the statutory language.  Because the word "sentencing" does not appear in the statutory language, we must determine whether it should be implied here.  We recently considered a similar argument in *Wilson v. Gibson*, 753 F.3d 1363, 1366–67 (Fed. Cir. 2014), where an incarcerated veteran argued that his benefits could not be reduced until the sixty-first day after his "final" conviction—*i.e.*, the date when he had exhausted his appellate and habeas corpus rights.  In *Wilson*, we observed that the statute used the word "conviction," not "final conviction."  We then concluded that this distinction required us to reject the appellant's contention that § 5313(a)(1)'s reduction of disability compensation could proceed only after "the conviction bec[ame] final in state courts, or after complete exhaustion of post-conviction review opportunities."  *Id.* at 1367.  Similarly, in the present case, we decline to equate the word "sentencing" with the statutory term "conviction," and reject Mr. Mulder's interpretation of the statute.

Supporting our reading is the fundamental canon of statutory construction that, "unless otherwise defined, words will be interpreted as taking their ordinary, con-

temporary common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). The language of § 5313(a)(1) plainly specifies the "conviction" date is the date on which the statutory sixty-day clock begins. As we recognized in *Wilson*, the word "conviction" is understood as "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." 753 F.3d at 1367 (quoting *Black's Law Dictionary* 358 (8th ed. 2004)). The Supreme Court has also equated a guilty plea, such as Mr. Mulder's no contest plea, with a conviction: "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112–13 (1983) (quotation marks and citation omitted).[2] A "sentence," on the other hand, is ordinarily understood as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty" or "the punishment imposed on a criminal wrongdoer." *Black's Law Dictionary* 1485 (9th ed. 2009). Thus, according to its ordinary meaning, a "conviction" occurs when the accused is found—or pleads—guilty; the convicted felon's "sentencing" is separate and distinct from the

---

[2]    In *Dickerson*, the Supreme Court concluded that a state's expungement of a felony conviction had no bearing on the underlying conviction's effect on an individual's ability to maintain a federal license to manufacture or sell firearms under 18 U.S.C. § 922(g). 460 U.S. at 119–20. Congress overruled this outcome in the Firearms Owners' Protection Act, Pub. L. 99-308, 100 Stat. 449, by providing that a conviction expunged under state law would not prevent an individual from maintaining such a license under § 922(d) or from possessing a firearm under § 922(g). *See Logan v. United States*, 552 U.S. 23, 27–28 (2007).

determination of guilt. Just as in *Wilson*, where we held the plain language of § 5313(a)(1) did not support reading "conviction" as a final, post-exhaustion of appeals conviction, here, there is likewise no basis for interpreting "conviction" to mean conviction and sentencing. Congress, could have, but did not, draft § 5313(a)(1) to reduce benefits post-sentencing or post-exhaustion of appeals. *See, e.g.*, 10 U.S.C. § 12312(a)(2) (providing for involuntary release from military service if a service-member "is convicted *and sentenced to confinement* . . . and the sentence has become final" (emphasis added)). Such specificity is absent here.

## A

To overcome the plain meaning of § 5313(a)(1), Mr. Mulder relies on Wisconsin's bail statute. Entitled "[e]ligibility for release," section 969.01 of the Wisconsin Statutes authorizes a court to release a criminal defendant from custody under certain conditions. Mr. Mulder argues that from the time he was arrested until the day he received a sentence including a term of imprisonment, he was incarcerated solely pursuant to section 969.01. Namely, when Mr. Mulder was first arrested, he was unable to pay the $750,000.00 bail set by the judge, and thus remained in custody under section 969.01. After the judge accepted his no contest plea and found him guilty, he remained in custody pending sentencing because he still was unable to make bail. Therefore, according to Mr. Mulder, until he was sentenced to a term of imprisonment, he was not incarcerated based on his felony conviction, but was in fact incarcerated because of his inability to post bail.

We disagree. Mr. Mulder's explanation of how Wisconsin's bail statute operates is insufficient to persuade

us to abandon the plain language of § 5313(a)(1).[3]  The statutory language does not require that the conviction be the sole reason that the individual is incarcerated.  We recognize that, under section 969.01, Mr. Mulder could have been released with conditions while awaiting sentencing for his felony conviction.[4]  The fact remains, however, that without Mr. Mulder's May 19, 2006 conviction, there would be no authority for his continued incarceration and his inability to make bail would be irrelevant.  In this way, Mr. Mulder's May 19, 2006 conviction is certainly one of the reasons, even if not the sole reason, for his remaining in custody.  The mere possibility of release does not break the causal link between Mr. Mulder's immediate incarceration following his convic-

---

[3]  The parties dispute whether Wisconsin law applies to determine whether incarceration and the felony conviction are adequately linked.  We doubt that Congress intended the causation analysis to turn on state law.  *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989) ("We start, however, with the general assumption that in the absence of a plain indication to the contrary, . . . Congress when it enacts a statute is not making the application of the federal act dependent on state law." (internal quotation marks omitted)).  Nevertheless, because we conclude that even the Wisconsin bail statute cannot alter the plain meaning of § 5313(a)(1), we need not decide whether Congress intended us to look to state law.

[4]  We also note that, if Mr. Mulder had been released pending sentencing under section 969.01(2), we would be confronted with a different question that we need not decide today.  Under those facts, we would need to determine whether the "incarceration" element of § 5313(a)(1) was met and whether the VA was therefore required to wait until Mr. Mulder was later incarcerated after sentencing to begin the sixty-day clock.

tion. In fact, after accepting Mr. Mulder's guilty plea, the court immediately "ordered defendant REMANDED into custody . . . ." J.A. 194.

B

Even though the statutory language is unambiguous and we need not consult the legislative history, that history nevertheless confirms our conclusion. Congress enacted § 5313 as part of the Veterans' Disability Compensation and Housing Benefits Amendments of 1980. At that time, the principal sponsor of the bill explained that

> the purpose of compensation is to replace the lost earning capability of a disabled veteran where the impairment is caused by a service-connected condition. I do not consider it unreasonable to recognize that individuals who are confined by our judicial system for commission of a serious offense against society are no longer available to the labor market. An economic detriment caused by a disability is not felt by such individuals during long periods of confinement.

126 Cong. Rec. 26,118 (1980) (statement of Rep. Montgomery). In light of the purpose behind providing disability compensation, Congress did not "see the wisdom" in providing substantial benefits to disabled veterans "when at the same time the taxpayers of this country are spending additional thousands of dollars to maintain these same individuals in penal institutions." *Id.*; *see also* 126 Cong. Rec. 26,122 (1980) (statement of Rep. Wylie) ("In the case of imprisonment, when a prisoner is being fully supported by tax dollars that fund the penal institution, it becomes ludicrous to continue payment of benefits designed to help him maintain a standard of living.").

Indeed, both this court and the Veterans Court have previously acknowledged this congressional purpose. *See Snyder v. Nicholson*, 489 F.3d 1213, 1215 (Fed. Cir. 2007)

("Congress recognized that [incarcerated] veterans were receiving benefits that were not offset to account for expenses, such as room and board, that were provided by the prisons."); *Wanless v. Shinseki*, 23 Vet. App. 143, 148 (2009), *aff'd*, 618 F.3d 1333 (Fed. Cir. 2010) ("Congress has explicitly concluded that if taxpayers are financing a veteran's incarceration, it is contrary to the public good to also pay him full VA disability benefits.").

These congressional statements further demonstrate that Congress's intent is best served by using the date on which the veteran was found guilty as the start date for the VA to calculate when the veteran's benefits will be reduced. Assuming the veteran is placed in custody after being found guilty of a felony, using the conviction date, rather than the later sentencing date, best achieves Congress's objective of preventing taxpayers from paying twice for such a veteran's living expenses.

                              C

Mr. Mulder also asserts that our interpretation of § 5313(a)(1) unfairly penalizes those veterans who lack the financial means to post bail. Mr. Mulder overlooks the fact that a criminal defendant who is later sentenced to a term of imprisonment will receive credit towards this term of imprisonment for incarceration during the criminal proceedings. *See* Wis. Stat. § 973.155(1)(a) ("A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed."); 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time spent in official detention prior to the date the sentence commences . . . ."). Accordingly, a veteran who is incarcerated prior to sentencing will generally be released earlier than if the veteran was not incarcerated until after sentencing. Any perceived inequity is remedied by the earlier resumption of benefits that accompa-

nies an earlier release from incarceration. *See* § 5313(a)(1) (providing that the reduction in disability benefits "end[s] on the day such incarceration ends").

## II

Finally, Mr. Mulder asserts that the VA violated its Duty to Notify and Assist by failing to adequately investigate Mr. Mulder's assertions that his sentence has been vacated. Although Mr. Mulder did inform the VA that his sentence was repeatedly vacated during his post-conviction proceedings, he never claimed—nor could he have—that his conviction had been overturned or that he had been released from custody. In fact, each of his letters to the VA originated from a correctional facility. In any event, changes in sentence do not warrant resumption of benefits under § 5313(a)(1). A veteran's compensation reduction does not end until the incarceration ends. The VA therefore had no obligation to conduct any further investigation. *See Robinson v. Shinseki*, 557 F.3d 1355, 1361 (Fed. Cir. 2009) (holding that the VA's obligation to assist and read filings in a liberal manner does not extend to "claims which have no support in the record").

## CONCLUSION

We have considered the remaining arguments and find them without merit. For the reasons stated above, the plain language of § 5313(a)(1) cannot support Mr. Mulder's proposed interpretation. Thus, the judgment of the Veterans Court is affirmed.

## **AFFIRMED**

## COSTS

No costs.