# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-5290

LARRY S. HELMICK, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 14, 2021)                                  Decided May 25, 2021)

*Andrew Cho*, of Bethesda, Maryland, with whom *Glenn R. Bergmann*, of Bethesda, Maryland, was on the brief for the appellant.

*Ryan D. Harrison*, of Washington, D.C., with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, TOTH, and LAURER, *Judges*.

ALLEN, *Judge*: Appellant Larry Helmick is the adult child of veteran Karl Helmick and the veteran's spouse, Lois Helmick. Karl and Lois Helmick are now deceased, though Karl Helmick predeceased Lois Helmick. In this appeal, which is timely and over which the Court has jurisdiction,[1] Larry Helmick appeals an April 9, 2019, Board of Veterans' Appeals decision that denied him additional accrued benefits based on special monthly pension with aid and attendance benefits due and unpaid to his mother at the time of her death.[2]

Congress has provided in 38 U.S.C. § 5121 that certain persons may receive accrued benefits following the death of someone entitled to receive periodic monetary benefits from VA at the time of his or her death. No matter how we approach this appeal, whether the Board erred comes down to the meaning of the phrase "bore the expense" in section 5121(a)(6), a provision describing one category of persons entitled to such accrued benefits. That statutory section provides that "only so much of the accrued benefits may be paid as may be necessary to reimburse

---

[1] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[2] Record (R.) at 5-11.

the person who bore the expense of last sickness and burial."[3] If "bore" means "paid," as the Board assumed, then the Board did not err in denying appellant additional accrued benefits. That is so because it is undisputed that appellant did not pay his mother's medical expenses. Rather, he has always maintained, and as the Board acknowledged, he loaned her $15,000 so that she herself could use the money to pay her medical expenses. She did, but she died before she could repay the loan. But if, on the other hand, "bore" means something broader than "paid," then the Board erred. The Board would have applied the incorrect legal standard to the facts.

We hold that, for purposes of section 5121(a)(6) and 38 C.F.R. § 3.1000(a)(5), "bore the expense" means something broader than "paid." That phrase includes, at a minimum, a loan under the circumstances we have here. The Board erred by employing too narrow an understanding of what entitles a person to accrued benefits under the law. Although we are troubled that this matter has been pending for far too long before VA—nearly a decade in fact—we are unable to bring appellant's saga to an end today. The Board here did not make the factual findings necessary for us to find that appellant "bore the expense." And although we had previously remanded appellant's claim to the Board to make the factual determination whether the expenses appellant allegedly bore were related to his mother's "last sickness," the Board did not do so. In other words, the Board failed to make all the predicate factual findings necessary for us to *review* the ultimate issue of appellant's entitlement to accrued benefits. So, we will set aside the Board's decision and remand this matter for further proceedings consistent with this decision.

## I. FACTS AND PROCEDURAL HISTORY

The material facts are undisputed here. The veteran died in May 2007. His spouse, appellant's mother, subsequently applied for and in an August 2009 rating decision was awarded a death pension, with aid and attendance, effective May 1, 2007.[4]

In February 2011, the spouse submitted a report asserting that she had paid $39,842.69 in her own unreimbursed medical expenses in 2010 and expected to pay $51,260.50 for her medical expenses in 2011.[5] The medical expense report for 2010 included $28,061.13 for assisted living

---

[3] 38 U.S.C. § 5121(a)(6); *see also* 38 C.F.R. § 3.1000(a)(5) (2020) (employing the statute's same language, except using an "or" in place of an "and").

[4] R. at 208.

[5] R. at 175.

expenses.[6] The form instructed her to "[r]eport the actual amount of unreimbursed medical expenses you paid for yourself . . . . Do not report any expenses you did not pay or expenses for which you were or will be reimbursed."[7] She estimated that her assisted living expenses for 2011 would be $45,600.[8] But she died in April 2011.[9]

Appellant then applied for some of his mother's accrued benefits, stating that he had paid $1,496.89 in burial expenses, and identifying a "[l]oan for assisted care in 2010, 2011" of $15,000 as an additional debt he had incurred on behalf of his mother.[10] In March 2012, VA granted $1,496.89 in accrued benefits for the burial expenses.[11] In August 2012, appellant disagreed with the decision because it did not address the $15,000 loan.[12] In a March 2015 Statement of the Case, VA continued to deny $15,000 in accrued benefits because appellant had not stated that he paid for his mother's last sickness.[13] "In addition," VA said, "as caregiver fees were considered as medical expenses in determining the amount of pension she was entitled to they would not be allowable expenses for accrued purposes"; VA cited no law to support this assertion.[14] From now on, we'll refer to this reasoning as the "double counting" or "can't have your cake and eat it too" basis for denial.

In April 2015, appellant filed a Substantive Appeal to the Board.[15] He stated that "[w]e loaned [my mother] money for her to pay the increased cost of care" following her stroke in 2011.[16] "That cost," he continued, "was reported as paid 2010 and partial 2011 medical expenses. This generated the accrued amount. It was her intent to use the adjustment for her reported medical expenses to repay us."[17] He further reported that his mother did not receive those adjusted funds

---

[6] R. at 176, 178.

[7] R. at 176.

[8] R. at 179.

[9] R. at 162.

[10] R. at 168.

[11] R. at 147.

[12] R. at 145.

[13] R. at 129.

[14] *Id.*

[15] R. at 109.

[16] *Id.*

[17] *Id.*

because she died during a delay in processing her medical expense report.[18] Along with a February 2016 statement, appellant submitted bank statements demonstrating that between September 2010 and April 2011, three checks, each in the amount of $5,000, had been issued to his mother, and that she had deposited them into her Fifth Third Bank account.[19] The evidence submitted indicated that the three $5,000 checks originated from a "Helmick Living Trust" account; appellant stated that this Discover Bank Money Market account was his.[20] In an August 2016 Supplemental Statement of the Case, VA again continued its denial, focusing on its conclusion that the medical expenses as issue were not associated with the veteran's spouse's last sickness; VA found that appellant had "provided evidence of providing loans to the claimant, [but] there is no proof that the loans were related to the claimant's last illness."[21] And VA reiterated the double counting basis for denial.[22]

In a December 2017 decision, the Board denied appellant's claim because it concluded that "[u]nfortunately, while the Board sympathizes with the appellant and recognizes the expenses paid by him," the law did not permit a grant of benefits on the last sickness basis.[23] When appellant appealed to this Court, we granted an August 2018 joint motion for remand (JMR), remanding the matter for the Board to provide an adequate statement of reasons or bases, and for the Board to address specifically appellant's mother's "atrial fibrillation with tachycardia with onset of 21 days prior, ischemic cardiomyopathy with onset of 20 years prior, and essential hypertension with onset 30 years prior, and whether those conditions meet the Board's definition of 'last sickness.'"[24]

But in the wake of the remand, in the April 9, 2019, decision at issue here, the Board denied the claim by focusing on the double counting basis only. The Board started with the premise that "the appellant may recover only so much of the accrued benefits, if any, as may be necessary to reimburse him for expenses he personally incurred in connection with [his mother's] last

---

[18] *Id.*

[19] R. at 89-100.

[20] R. at 89.

[21] R. at 62.

[22] *Id.*

[23] R. at 37.

[24] R. at 30.

sickness."[25] The Board reasoned that "the medical expenses that the appellant states that he loaned [his mother] $15,000 for, and for which he should receive reimbursement, are the same expenses that were claimed by [his mother] as being paid by her to support her claim for pension benefits."[26] The Board further found that "[t]he Medical Expense Report clearly noted that any expenses not paid, or expenses paid for by someone else, should not be reported," so "[b]y signing the Medical Expense Report, [his mother] certified that her medical expenses, to include expenses for assisted living, were being paid by her, and would continue to be paid by her."[27] Thus, the Board denied the claim on the double counting basis; it determined that the mother's "medical expenses for assisted living cannot be counted both as an unreimbursed medical expense paid by [appellant's mother] to establish entitlement to pension benefits, and then be again counted as payments made by the appellant from his own funds for purposes of establishing entitlement to accrued benefits."[28] Regarding the JMR, the Board stated that it had "considered" the motion, but that it need not address it further because "the Board's decision herein rests upon a separate and independent basis from the (vacated) December 2017 decision, and its analysis renders that issue moot."[29] This appeal followed.

## II. LAW

VA determines income eligibility for pension, and the amount of pension payable, by subtracting the annual countable income from the applicable maximum annual pension rate (MAPR).[30] In determining annual countable income for pension purposes, VA cannot count among other things "unreimbursed medical expenses, to the extent that such amounts exceed 5 percent of the [payable MARP]."[31]

When someone who is entitled to pension dies, VA must pay to certain categories of payees any accrued benefits that remain due and unpaid to the deceased person, according to 38 U.S.C.

---

[25] R. at 9 (first citing 38 U.S.C. § 5121(a)(6); then citing 38 C.F.R. § 3.1000 (a)(5)).

[26] *Id.*

[27] *Id.*

[28] R. at 9-10.

[29] R. at 10.

[30] *See generally* 38 U.S.C. § 1521; 38 C.F.R. §§ 3.3, 3.23.

[31] 38 U.S.C. § 1503(a)(8); 38 C.F.R. § 3.272(g).

§ 5121 and 38 C.F.R. § 3.1000. The present appeal centers on only one category of payee: "In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial."[32] The statute provides "[n]o other categories of payee at death" that could apply here.[33]

But in defining this category of payee, neither statute nor regulation defines "bore the expense." Our review of caselaw suggests that this Court has not attempted to define this phrase, at least not in any way that helps us here. The Court seems to have come closest to doing so in a memorandum decision, *Fournier v. McDonald*.[34] There "[t]he appellant asserted that he should be reimbursed for his father's medical expenses because he had loaned his father the money to pay his medical expenses initially with the expectation of being reimbursed when his father received payment from VA."[35] Without explaining its apparent interpretation, the Court assumed that "bore" means "paid" or "is responsible for any unpaid bills."[36] It is not clear from *Fournier* whether the appellant argued for a broader interpretation of "bore the expense" or whether the Court on its own considered the possibility of a broader interpretation. The appellant in *Fournier* seemed to insist that he was entitled to reimbursement only as a "creditor."[37] Of course, *Fournier* is nonprecedential. But in any event, *Fournier* contains no analysis that we can consult here in any way.

The same is true for the precedential *Wilkes v. Principi*.[38] In *Wilkes*, a veteran who had been awarded compensation benefits died; his accrued benefits due and unpaid totaled $109,464.[39] The veteran's nephew and niece (claimants) sought those accrued benefits for the veteran's estate, apparently with the expectation that they then might have been entitled to recover these funds

---

[32] 38 U.S.C. § 5121(a)(6); *see also* 38 C.F.R. § 3.1000(a)(5) (employing the same language except an "or," which was substituted for the "and" in the statute).

[33] *Youngman v. Shinseki*, 699 F.3d 1301, 1303 (Fed. Cir. 2012).

[34] No. 14-1101, 2015 WL 3964177, at *2 (Vet. App. June 30, 2015).

[35] *Id.* at 1.

[36] *See id.* at 2 (in the analysis using "paid" and "is responsible for any unpaid bills" as synonyms for "bore the expense").

[37] *See id.* (focusing on that apparently sole argument).

[38] 16 Vet.App. 237 (2002).

[39] *Id.* at 239.

presumably through State law.[40] According to the claimants, "expenses incurred for the last sickness and burial of the decedent had been prepaid."[41] The claimants never claimed reimbursement as persons who bore the expense of the veteran's last sickness and burial. Rather, they argued that section 5122, not section 5121, applied, and therefore the estate was entitled to the $109,464.[42] At every opportunity, the claimants seemed to actively disavow section 5121's applicability.[43] Nevertheless, to rule out all possible bases for entitlement, the Court in *Wilkes* considered whether the claimants were persons who bore the expense of last sickness and burial.[44] To that end, the Court arguably assumed that "bore" means "paid."[45] But that assumption was not supported by any analysis on which we can rely here. What's more, it appears that the Court in *Wilkes* had no occasion to consider the precise interpretation question that we face here because *Wilkes* did not involve a family loan. So, given the circumstances at issue here in *Helmick*, *Wilkes* offers no guiding analysis on whether "bore" could mean something broader than "paid."[46]

Because we found no caselaw that settles the question before us, and the parties cite none, we will examine the meaning of "bore the expense" anew. The process for determining the meaning of statutes and regulations is well established. Questions of statutory and regulatory interpretation are pure questions of law that the Court reviews de novo.[47] We look to the plain meaning of statutes and regulations and, when we find plain meaning, our job is simply to apply it.[48] And, "in circumstances where the regulatory language mirrors the statute, 'the question

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *E.g., id.* (arguing unsuccessfully before this Court that the claim did not qualify as one for accrued benefits under sections 5121 and 5122 because the $109,464 was a one-time lump-sum payment, not a periodic payment).

[44] *Id.* at 242.

[45] *Id.*

[46] Note that neither party cited *Wilkes*. Presumably, if the Secretary thought *Wilkes* controlled the issue in this case, he would have relied on it in his brief.

[47] *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018) (statutory interpretation); *Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020) (regulatory interpretation).

[48] *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012) (statutes); *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)) (regulations); *see also Kisor v. Wilkie*, __ U.S. ___, ___, 139 S. Ct. 2400, 2415 (2019); *Artis v. District of Columbia*, __ U.S. __, __, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

presented is one of statutory interpretation.'"[49] "[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."[50] With these principles in mind, we will interpret section 5121(a)(6), apply its plain meaning to this appeal's circumstances, and then elaborate on how the Board erred.

## III. ANALYSIS

At oral argument[51] it became especially clear that this appeal comes down to the meaning of "bore the expense," because the Board's double counting basis for denial depends on the Board's assumption that "bore" means "paid."[52] To be sure, in its decision on appeal the Board did not explicitly say it was interpreting the controlling statute or regulation. But its reasoning unquestionably, even if implicitly, depends on interpreting "bore" to mean "paid." And we have as much authority to review and correct implicit errors of law as we have to review and correct explicit ones.[53]

Because the language of § 3.1000(a)(5) almost exactly mirrors that of section 5121(a)(6), we will focus our interpretation on the language of section 5121(a)(6).[54] Consider again the statutory provision at issue: "In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial."[55]

In section 5121(a)(6), "bore" plainly means something broader than "paid." To state the obvious, Congress used "paid" and "bore" in the very same sentence.[56] Had Congress wanted to say "paid" instead of "bore," it clearly knew how to do so. Had Congress wanted to restrict the

---

[49] *Mulder v. Gibson*, 27 Vet.App. 10, 17 (2014) (quoting *Sharp v. Shinseki,* 23 Vet.App. 267, 275 (2009)), *aff'd sub nom. Mulder v. McDonald*, 805 F.3d 1342 (Fed. Cir. 2015).

[50] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

[51] *See generally* Oral Argument, *Helmick v. McDonough*, No. 19-5290 (held Apr. 14, 2021), https://www.youtube.com/watch?v=W0g_iPOBASY (narrowing the question down to the meaning of "bore the expense").

[52] *See* R. at 9-10 (substituting the terms "personally incurred" or "paid" or "payments" for "bore the expense").

[53] *See, e.g.*, *McCartt v. West*, 12 Vet.App. 164, 168-69 (1999) (interpreting statute and regulation and holding in light of the Court's interpretation that an implicit determination by the Board was erroneous as a matter of law).

[54] *See Mulder*, 27 Vet.App. at 17. *Compare* 38 U.S.C. § 5121(a)(6), *with* 38 C.F.R. § 3.1000(a)(5) (employing the same language as statutory section 5121(a)(6), but employing "or" in place of the statute's "and").

[55] 38 U.S.C. § 5121(a)(6); *see also* 38 C.F.R. § 3.1000(a)(5).

[56] § 5121(a)(6).

class of people entitled to accrued benefits under section 5121(a)(6) to those who "paid" an expense, Congress could have and would have. But it didn't.

Instead, Congress used two different terms—"paid" and "bore"—in the same provision.[57] Therefore, we think Congress meant two different things by "paid" versus "bore."[58] Perhaps to state the obvious, we presume that Congress said "bore" because it meant "bore" and meant "bore" because it said "bore"—not only "paid."[59]

The question then becomes what "bore the expense" means. Certainly, the phrase "bore the expense" *can* mean "paid the expense."[60] But "bore" is not limited to "paid." Critically and plainly, "bore" can mean more than "paid" and include more circumstances: to "bear" something can also mean "to accept or allow oneself to be subjected to especially without giving way"; to "assume" or "accept"; "to support the weight of; sustain"; "to move while holding up and supporting (something)"[61]; or "[t]o support or carry."[62] Congress's clear intent was to make whole the one who—one way or another—was saddled with the financial burden of a beneficiary's last sickness and burial. And the plain meaning of "bore the expense" includes whatever circumstances created that financial burden.

Another way to look at the relationship between "bore" and "paid" is, sometimes the person who bore the expense is the person who paid the expense, and vice versa. But not always. Take a lighter situation, where a parent gives his or her child $5 to buy ice cream. When the child goes to the counter, orders, and hands over $5 in exchange for the ice cream,[63] the child can rightfully claim that he or she "paid" the expense of the ice cream. But as the one actually out $5, the parent could just as rightfully claim that he or she was the one who "bore" the expense of the ice cream. Those claims can coexist; they are not mutually exclusive.

---

[57] *Id.*

[58] *See S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (citing among other cases *Russello v. United States,* 464 U.S. 16, 23 (1983)) ("It is a well-established canon of statutory interpretation that the use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.").

[59] *See Germain*, 503 U.S. at 253-54.

[60] *Bear the cost/expense etc*, MACMILLAN DICTIONARY, https://www.macmillandictionary.com/us/dictionary/american/bear-the-cost-expense-etc (last visited May 6, 2021). Note that "bear" is the present tense of "bore."

[61] *Bear*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/bear (last visited May 6, 2021).

[62] *Bear*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[63] The hypothetical still works even if the child pulls out a different $5 bill from his pocket, because money is fungible.

So too here. It is undisputed that appellant lent his mother $15,000 so that she could pay her medical expenses. It is undisputed that the mother claimed that she "paid" her medical expenses and submitted medical expense reports to that effect.[64] And it is undisputed that she never repaid the loan, so appellant is out $15,000. Therefore, for purposes of seeking reimbursement under section 5121(a)(6), appellant can rightfully claim that he is the one who "bore" $15,000 worth of his mother's medical expenses. His and his mother's claims can coexist; they are not mutually exclusive.

Now that we have determined the plain meaning of "bore the expense" in section 5121(a)(6) and applied it to the circumstances of this appeal, we can easily see where the Board went wrong. First, as a point of clarification, the Board confusingly seemed to reason at times as if appellant asserted that he paid his mother's medical expenses.[65] But he didn't. In fact, the Board itself acknowledged elsewhere in its analysis that appellant asserted that he *loaned* his mother the $15,000.[66] So, despite some confusion, we think the Board understood the correct and undisputed facts.

Where it went wrong was with the law and its application to the undisputed facts. The question before the Board was whether appellant "bore" $15,000 worth of his mother's medical expenses, because he loaned her that money and was not repaid, such that he was entitled to reimbursement under section 5121(a)(6). The Board implicitly said he did not bear that expense because the Board wrongly assumed that, for purposes of section 5121(a)(6), "bore" means "paid." And as a result, the Board wrongly treated appellant's reimbursement claim and his mother's pension claim as mutually exclusive and denied appellant's reimbursement claim on that basis (i.e., on the "double counting" or "can't have your cake and eat it too" basis).[67]

Finally, we note that the Board cited no other law that could justify its double counting basis for denial. And the Board cites no other law for good reason; as far as we can tell, that basis for denial has no tether to law, apart from the "bore"-"paid" false equivalency we have already analyzed and rejected. So, to the extent the Board suggested that some unspecified law otherwise

---

[64] Recall that the form instructed her to "[r]eport the actual amount of unreimbursed medical expenses you *paid* for yourself . . . . Do not report any expenses you did not *pay* or expenses for which you were or will be reimbursed." R. at 176 (emphasis added). And, for what it's worth, a loan is not a reimbursement.

[65] *See* R. at 9-10.

[66] R. at 9.

[67] *See* R. at 9-10.

required a choice between claiming the $15,000 as unreimbursed medical expenses on the pension income/asset verification form or claiming reimbursement of the $15,000 under section 5121(a)(6), the Board erred as a matter of law in that respect too. Or at least provided an inadequate statement of reasons or bases.

It would appear, then, that appellant is entitled to reimbursement. Regrettably though, we cannot say so for sure—for two reasons. First, the Board failed to make the factual findings necessary for us to determine that as a matter of fact appellant "bore the expense[s]" at issue. We note, though, that this failure was entirely avoidable. The Board repeatedly acknowledged appellant's factual theory, had every opportunity to make the requisite findings, and seemingly had plenty of evidence in the record to do so.[68] Yet the Board did not make those findings, leaving us with no option but to remand the matter.[69] On remand, should the Board reach factual conclusions different than those it assumed and seemingly accepted all along, the Board should be especially cognizant of its reasons-or-bases obligations.

Second, and similarly, remand, not reversal, is appropriate here because the "last sickness" issue described in the August 2018 JMR still remains and the Board did not perform the factfinding necessary for us to address that issue now on appeal.[70] Therefore, as much as we might wish we could save appellant another trip to the Board, we can't.

On remand, the Board must make the requisite findings as to whether by lending his mother $15,000 that she did not repay, appellant "bore" $15,000 worth of his mother's medical expenses; the Board must comply with the previously entered JMR; and the Board must determine whether

---

[68] *See* R. at 6 (acknowledging appellant's assertion that he gave his mother $15,000 for medical expenses); R. at 8 (noting from the August 2016 Supplemental Statement of the Case that "the RO stated that . . . the appellant had proved that he made loans to [his mother]"); R. at 9 (acknowledging appellant's position that "he lent his mother (L.H.) money to cover medical expenses in 2010 and 2011, and that L.H. agreed to reimburse him for those expenses following adjustments to her award of special monthly pension"); *id.* (stating that "the medical expenses that the appellant states that he loaned L.H. $15,000 for, and for which he should receive reimbursement, are the same expenses that were claimed by L.H. as being paid by her to support her claim for pension benefits"); R. at 9-10 (reasoning that "L.H.'s continuing medical expenses for assisted living cannot be counted both as an unreimbursed medical expense paid by L.H. to establish entitlement to pension benefits, and then be again counted as payments made by the appellant from his own funds for purposes of establishing entitlement to accrued benefits").

[69] *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (holding "that the evaluation and weighing of evidence are factual determinations committed to the discretion of the factfinder—in this case, the Board"); *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) ("[A]ppellate tribunals are not appropriate fora for initial fact finding."); *Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("Generally, where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.").

[70] *See* R. at 10 (declining to address the JMR issue as "moot"); *Deloach*, 704 F.3d at 1380; *Hensley*, 212 F.3d at 1263.

11

the expenses appellant allegedly bore were expenses incurred with respect to his mother's "last sickness."

We see no need to address the parties' remaining arguments individually. Appellant's additional arguments would not result in a remedy greater than remand.[71] And the Secretary's arguments depend on the "bore"-"paid" false equivalency.

## IV. CONCLUSION

After consideration of the governing law, the parties' briefs, oral argument, and the record, the Court SETS ASIDE the Board's April 9, 2019, decision denying appellant additional accrued benefits and REMANDS this matter for further proceedings consistent with this decision.

---

[71] *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) (noting that "the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion"); *Best v. Principi*, 15 Vet.App. 18, 19-20 (2001) (per curiam order) (noting that "it has been the practice of this Court that when a remand is ordered because of an undoubted error that requires such a remedy, the Court will not, as a general rule, address other putative errors raised by the appellant").