# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1222

DONALD MULDER, APPELLANT,

V.

SLOAN D. GIBSON,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 23, 2014                    Decided July 8, 2014)

*Travis J. West* of Madison, Wisconsin, was on the brief for the appellant.

*Bryan W. Thompson,* Appellate Attorney, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Nisha C. Hall*, Deputy Assistant General Counsel; all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and BARTLEY, *Judges*.

HAGEL, *Judge*:  Donald L. Mulder appeals through counsel a March 27, 2012, Board of Veterans' Appeals (Board) decision that found that a reduction of VA disability compensation payments due to incarceration for conviction of a felony pursuant to 38 C.F.R. § 3.665(a), effective July 19, 2006, was proper.[1] Mr. Mulder's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a).

On January 15, 2014, this appeal was assigned to a panel of the Court, which heard oral argument on April 23, 2014.  The precise question before the panel is whether the Board erred in

---

[1] The Board also remanded the issue of whether the removal of Mr. Mulder's spouse as a dependent due to divorce effective October 1, 2006, was proper. The Board also determined that the finding that Mr. Mulder was a fugitive felon resulting in termination of disability compensation benefits payments for the period between May 16, 2005, and July 11, 2005, was not proper. Therefore, the Board remanded the issue of whether an overpayment of disability compensation benefits in the amount of $10,399.83 was properly created for that time period. Accordingly, those matters are not before the Court at this time.  *See* 38 U.S.C. § 7266(a) (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).

concluding that the proper effective date for the reduction of disability compensation payments for a veteran who has been incarcerated for conviction of a felony for over 60 days begins at the date of conviction rather than the date of sentencing pursuant to 38 C.F.R. § 3.665(a). We conclude that the Board did not err. Accordingly, the Court will affirm the March 2012 Board decision.

## I. FACTS

Mr. Mulder served on active duty in the U.S. Army from April to December 1982, from October 1992 to April 1993, and November 1993 to November 1994. Record (R.) at 172.

In April 1998, a VA regional office awarded Mr. Mulder a 50% combined disability rating for multiple service-connected conditions, including a back disability rated 40% disabling. R. at 490. That decision became final.

In May 2006, Mr. Mulder's former spouse notified VA that Mr. Mulder was incarcerated. R. at 321-22. In February 2007, VA received confirmation of this fact from Racine Correctional Facility in Racine, Wisconsin. R. at 318-20. In June 2007, VA obtained Wisconsin Circuit Court records from the Wisconsin Consolidated Court Automation Program website, which reveal that on May 19, 2006, Mr. Mulder pled "no contest" to a felony charge. R. at 312. That record also stated that on that date the "[c]ourt found defendant guilty as charged in the information and ordered a Judgment of Conviction to be entered on the record. . . . Court ordered defendant REMANDED into the custody of the Milwaukee County Sheriff's Department." *Id.* On June 16, 2006, Mr. Mulder was sentenced.[2]

In July 2007, VA sent Mr. Mulder a proposed rating reduction that notified him that his benefit payments would be reduced on the 61st day after incarceration for conviction of a felony, pursuant to § 3.665(a). R. at 304. In August 2007, Mr. Mulder submitted a statement to VA indicating that his "sentence was VACATED." R. at 275-76. Attached to his statement was a letter from the Wisconsin Public Defender's office that stated, "[t]here is no written [conviction] order; [the judge] delivered his ruling orally." R. at 277. According to a September 2007 VA report of contact, Mr. Mulder's social worker reported that he was "still incarcerated and no ruling has been made

---

[2] Mr. Mulder's sentence was vacated and modified multiple times. As discussed extensively in Part III.C. below, however, those modifications had no effect on the date of his conviction.

about overturning his guilty plea." R. at 272. That same month, VA sent Mr. Mulder a rating decision that implemented the rating reduction, effective July 19, 2006, 61 days after May 19, 2006, the date of Mr. Mulder's plea of no contest and incarceration for that felony. R. at 270. In October 2007, Mr. Mulder filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

In August 2009, Mr. Mulder submitted copies of his Judgment of Conviction from the Wisconsin Circuit Court that lists the date May 19, 2006, under the heading "Date(s) convicted." R. at 57.

In March 2012, the Board issued the decision on appeal finding that, among other things, the reduction of Mr. Mulder's VA benefits payments effective July 19, 2006, was proper. The Board explained that "[p]ertinent court records list [Mr. Mulder's] conviction date as May 19, 2006." R. at 13. The Board acknowledged that Mr. Mulder's sentence had been vacated and modified, but found that "the conviction itself has not been overturned or vacated[,] and [he] remains incarcerated." *Id.* This appeal followed.

## II. PARTIES' ARGUMENTS

Mr. Mulder raises four arguments on appeal. First, he argues that the Board misinterpreted 38 U.S.C. § 5313 and 38 C.F.R. § 3.665(a) when it concluded that he was incarcerated "for conviction of a felony" as of May 19, 2006.[3] Specifically, Mr. Mulder relies on Wisconsin State statute § 972.13(3) for the proposition that he was not incarcerated for conviction of a felony until his judgment of conviction and pronouncement of sentence were entered. Appellant's Br. at 10-11. Second, he argues that the Board erred when it determined that VA satisfied its duties to assist and notify. Third, he argues that the Board failed to address a reasonably raised claim for reinstatement of benefits. Fourth, he argues that the Board's determination that he incurred a debt as a result of overpayment is clearly erroneous.

---

[3]Mr. Mulder states in his opening brief that although he "refers to the statutory provision for the sake of consistency and clarity . . .[he] notes that the analysis provided herein applies equally to the regulation as well." Appellant's Brief (Br.) at 15 n.5. Therefore, the Court will refer to the regulatory provision throughout its decision.

The Secretary disputes these assertions and argues that the Board properly applied § 3.665(a) when it determined that the date of incarceration for conviction of a felony rather than the date of sentencing triggered the reduction of Mr. Mulder's benefits. In support of this assertion, the Secretary cites a precedential VA General Counsel decision in which the General Counsel determined that the reduction of benefits does not begin until after "the pronouncement of guilt for [the] requisite crime" and "period of incarceration for purposes of [section 5313], [] include[s] any period of incarceration between the *date of conviction and the date of sentencing*." *See* VA Gen. Coun. Prec. 3-2005 (Feb. 23, 2005) (emphasis added). The Secretary also asserts that the duty to assist was not for application as Mr. Mulder was not entitled to benefits during the requisite time period as a matter of law and the Court lacks jurisdiction over the portion of the Board decision addressing overpayment of benefits

### III. ANALYSIS

A. Effective Date for Reduced Compensation Payments

First, Mr. Mulder argues that the Board misinterpreted § 3.665 when it used the date of conviction rather than the date of sentencing to calculate the effective date of his reduced compensation payments. This is a question of law that the Court reviews de novo. *See* 38 U.S.C. § 7261(a)(1); *Smith v. Gober*, 14 Vet.App. 227, 230 (2000).

Section 5313 provides that

> any person who is entitled to compensation . . . and who is incarcerated in a Federal, State, local, or other penal institution or correctional facility for a period in excess of [60] days for conviction of a felony shall not be paid such compensation . . . for the period beginning on the [61st] day of such incarceration and ending on the day such incarceration ends.

38 U.S.C. § 5313(a)(1). The Secretary implemented section 5313 in 38 C.F.R. § 3.665(a), which similarly provides that "[a]ny person . . . who is incarcerated in a Federal, State or local penal institution in excess of 60 days for conviction of a felony will not be paid compensation . . . in excess of the amount specified in paragraph (d) of this section beginning on the 61st day of incarceration."[4]

---

[4]Subsection (d) provides:
Amount payable during incarceration--

(1) Veteran rated 20 percent or more. A veteran to whom the provisions of paragraphs (a) and (c) of

Accordingly, the elements that must be present before VA can reduce a veteran's benefits pursuant to § 3.665(a) are: (1) incarceration in a penal institution; (2) for a period in excess of 60 days; (3) a conviction; and (4) a felony.

Mr. Mulder's only dispute ultimately lies with the definition of "incarcerated . . . for conviction of a felony." Although Mr. Mulder concedes that he was incarcerated between May 19, 2006, and June 16, 2006, he asserts that he had not yet been incarcerated for his felony conviction for purposes of § 3.665(a) because, until the date of his sentencing, he continued to be incarcerated pursuant to the Wisconsin bail statute. In other words, Mr. Mulder asserts that in his case, incarceration between conviction and sentencing was not "incarcera[tion] . . . for conviction of a felony" pursuant to § 3.665(a), and consequently the 61-day trigger should have begun on June 16, 2006, the date of sentencing, rather than May 19, 2006, the date he pled no contest.

The Secretary asserts that "incarceration after conviction, but before sentencing, for a felony triggers the 60-day period of full benefits payments described in Section 5313." Secretary's Brief (Br.) at 21. The Court agrees with the Secretary.

### *1. Plain Meaning*

First, a plain reading of the statutory and regulatory language compels the conclusion that incarceration following conviction, but prior to sentencing, triggers the 60-day period pursuant to section 5313 and § 3.665(a). Determining a statute's or a regulation's plain meaning requires examining the specific language at issue and the overall structure of the statute. *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988)), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir.1993), *aff'd*, 513 U.S. 115 (1994). "On review, if the meaning of the regulation is clear from its language, then that is the 'end of the

---

this section apply with a service-connected disability evaluation of 20 percent or more shall receive the rate of compensation payable under 38 U.S.C. 1114(a).

(2) Veteran rated less than 20 percent. A veteran to whom the provisions of paragraphs (a) and (c) of this section apply with a service-connected disability evaluation of less than 20 percent (even though the rate for 38 U.S.C. 1114(k) or (q) is paid) shall receive one-half the rate of compensation payable under 38 U.S.C. 1114(a).

(3) Surviving spouse, parent or child. A surviving spouse, parent, or child, beneficiary to whom the provisions of paragraphs (a) and (c) of this section apply shall receive one-half the rate of compensation payable under 38 U.S.C. 1114(a).

matter.'" *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Gardner*, 513 U.S. at 120). Further, the United States Supreme Court has held that, "unless otherwise defined, words [in a statute] will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).

When reading section 5313(a)(1) as a whole, the plain language is clear that the 60-day calculation begins on the 1st day of incarceration for *conviction* of a felony. *See Wilson v. Gibson*,__F.3d__,__,No. 2013-7037, 2014 WL 2579614, at *5 (Fed. Cir. June 10, 2014) (holding that "[r]eduction of compensation benefits begins on the [61st] day of incarceration for a felony conviction."). Neither the statute nor the corresponding regulation, § 3.665(a), makes any reference to sentencing. Both section 5313(a)(1) and § 3.665(a) use the term "conviction," which means "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty." BLACK'S LAW DICTIONARY 384 (9th ed. 2009); *see Wilson*, 2014 WL 2579614, at *4 (adopting the *Black's Law Dictionary* definition of "conviction."). Similarly, here, the Court concludes that the ordinary meaning of conviction does not relate to sentencing; rather, it relates to the determination of guilt. Here, it is undisputed that Mr. Mulder pled "no contest" to a felony charge, that the judge accepted his plea on May 19, 2006, and that Mr. Mulder remained in custody for the felony from that time forward. *See* R. at 57, 312. Contrary to Mr. Mulder's assertions, the date of sentencing is irrelevant to the determination that an individual has been "convicted" for the purposes of § 3.665(a).

Moreover, to the extent that Mr. Mulder argues that the word "for" in the phrase "for conviction of a felony" requires a nexus between incarceration and conviction, that requirement is clearly satisfied here. At the time that Mr. Mulder pled "no contest" on May 19, 2006, he was "remanded into the custody of the Milwaukee County Sheriff's Department" (R. at 312) and, thus, was incarcerated "for conviction of a felony" as of that date. 38 C.F.R. § 3.665(a).

Further, the fact that Mr. Mulder's pre-conviction incarceration was eventually converted to time served as part of his sentence, thereby decreasing the amount of time he would spend in jail post-conviction, is inapposite here. During his pre-trial confinement, Mr. Mulder was in receipt of his full benefits. The fact that the state of Wisconsin may have converted Mr. Mulder's pre-trial confinement to post-conviction credit towards his sentence has no bearing on Mr. Mulder's VA

benefits, as § 3.665(i) specifically provides for "resumption of payment of full disability compensation" upon release.[5] *Shephard v. Shinseki*, 26 Vet.App. 159, 163 (2013). Consequently, the Court concludes that the Board's interpretation of section 5313 and § 3.665(a) is consistent with the plain language of the provisions. *See Gardner*, 1 Vet.App. at 586.

### 2. *Persuasiveness of the Secretary's Interpretation*

To the extent that the phrase "incarcerated . . . for conviction of a felony" found in section 5313 and § 3.665 can be read as ambiguous, the Secretary argues that the Court should look to the agency's interpretation of this language, provided in a VA General Counsel Precedent Opinion. *See* VA. Gen. Coun. Prec. 3-2005 (Feb. 23, 2005). It is well established that courts should defer to an agency's interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter. *See Smith v. Nicholson,* 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)); *Mason v. Shinseki*, 26 Vet.App. 1, 7 (2012); *Tatum v. Shinseki*, 24 Vet.App. 139, 142 (2010). "The Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference by the courts." *Smith*, 451 F.3d at 1349; *see United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 202 (2001); *Auer*, 519 U.S. at 461-62; *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991). Further, when a court interprets an administrative regulation, it "must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). The administrative construction becomes "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.*; *see also Haas v. Peake*, 525 F.3d 1168, 1186 (Fed. Cir. 2008).

Substantial deference to an agency's interpretation of an ambiguous regulation is not due, however, if the regulation in question merely parrots the statute. *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006); *Haas*, 525 F.3d at 1186 (if deference were due to such interpretations, "an agency could bypass meaningful rule-making procedures by simply adopting an informal 'interpretation' of

---

[5]To the extent that Mr. Mulder believes his conviction date in records from the Wisconsin Circuit Court is incorrect, he must seek relief from the appropriate Wisconsin state court to modify the court order upon which VA relied.

regulatory language taken directly from the statute in question"); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (an agency cannot "under the guise of interpreting a regulation . . . create *de facto* a new regulation"). Rather, in circumstances where the regulatory language mirrors the statute, "the question presented is one of statutory interpretation." *Sharp v. Shinseki*, 23 Vet.App. 267, 275 (2009); *see also Gonzales*, 546 U.S. at 257 ("[T]he existence of a parroting regulation does not change the fact that the question here is not the meaning of the regulation but the meaning of the statute.").

The Secretary interprets section 5313 and § 3.665(a) as permitting the calculation of the 61st day beginning from the *date of conviction* for a person who is incarcerated for conviction of a felony. In support of his interpretation, the Secretary relies on VA General Counsel Precedent Opinion 3-2005, which states that

> the [61st] day for purposes of 38 U.S.C. §[] 5313(a) . . . cannot occur until [61] days after a judge or jury has found an individual guilty of a crime and the individual has been imprisoned or incarcerated because of the determination of guilt. Thus, although a veteran may have been incarcerated prior to conviction[,] and although the period of incarceration prior to conviction may have been credited against the veteran's sentence, the [61st] day of incarceration should[,] for this purpose[,] be measured from the date all conditions precedent have occurred, including pronouncement of guilt by a judge or jury. However, *once a veteran is imprisoned or incarcerated in a penal institution because of pronouncement of guilt for a requisite crime, the period of incarceration for purposes of [section 5313], would include any period of incarceration between the date of conviction and the date of sentencing.*

VA Gen. Coun. Prec. 3-2005 (Feb. 23, 2005) (emphasis added).

The language "incarcerated . . . for conviction of a felony" found in § 3.665(a) mirrors exactly the language used by Congress in section 5313(a)(1). *See* Part III.A, *ante*. Although the regulation defines and clarifies certain other aspects of section 5313, it does not define or clarify the meaning of "incarcerated . . . for conviction of a felony." 38 U.S.C. § 5313(a)(1); *see, e.g.*, 38 C.F.R. § 3.665(c) (clarifying the veterans to whom the § 3.665 benefit reduction applies); § 3.665(d) (defining compensation payment amounts for veterans receiving various disability evaluations). Accordingly, although the VA General Counsel opinion may be said to be interpreting regulatory language, the portion of the regulation at issue parrots the statute. *See Gonzales*, 546 U.S. at 257 (regulation merely parrots statute where it "just repeats two statutory phrases and attempts to

8

summarize the others" and "gives little or no instruction on a central issue"). Moreover, in purporting to clarify the ambiguous term, the VA General Counsel opinion specifically cites the statute. *See* VA. Gen. Coun. Prec. 3-2005 (Feb. 23, 2005). The question at hand is therefore one of statutory interpretation. *See Gonzales*, 546 U.S. at 257; *Sharp*, 23 Vet.App. at 275.

An agency interpretation through other than congressionally delegated authority is not entitled to deference under *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). *Sharp*, 23 Vet.App. at 275. Rather, the extent to which the interpretation is entitled to respect "will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Gonzales*, 546 U.S. at 256; *Sharp*, 23 Vet.App. at 275.

VA General Counsel precedent opinions "constitute a body of experience and informed judgment" on VA's part, *Osman v. Peake*, 22 Vet.App. 252, 256 (2008), and the Board is "bound in its decisions by the . . . precedent opinions of the chief legal officer of the Department." 38 U.S.C. § 7104(c). However, this Court is not so bound, *Hornick v. Shinseki*, 24 Vet.App. 50, 52-53 (2010), and we analyze VA General Counsel opinions according to their "power to persuade," under *Skidmore*. *See Hornick*, 24 Vet.App. at 53; *Osman*, 22 Vet.App. at 256. Accordingly, to the extent that section 5313's language regarding "incarcerated . . . for conviction of a felony" is construed as ambiguous, VA General Counsel Opinion 3-2005 is entitled to respect from this Court insofar as it has the "power to persuade." *Skidmore*, 323 U.S. at 140.

The Court concludes–to the extent that the statute can be read as ambiguous–that the Secretary's interpretation is persuasive and entitled to respect. The interpretation is presented with supporting rationale, has not been shown to be inconsistent with any other position taken by the Secretary on the issue, and, as discussed in Part III.A.1., is consistent with the plain language of the statute, in that the focus is on the date of *conviction* rather than the date the *sentence* is entered. *See Skidmore*, 323 U.S. at 140; *see also Wanless v. Shinseki*, 23 Vet.App. 143, 150-51 (2009) (holding that the VA general counsel opinion interpreting section 5313 was entitled to respect where the interpretation was accompanied by supporting rationale and was not inconsistent with previous VA positions); *Sharp*, 23 Vet.App. at 275 (rejecting VA interpretation of ambiguous language where the

Secretary offered no support for his interpretation); *Osman*, 22 Vet.App. at 259-60 (rejecting VA General Counsel interpretation that was inconsistent with a prior interpretation).

Further, as to Mr. Mulder's argument that until he was sentenced he was not incarcerated for conviction of a felony because the Wisconsin bail statute did not require that he be incarcerated prior to sentencing, the Court finds persuasive the fact that neither section 5313 nor § 3.665(a) mentions state law, particularly in light of the fact that Congress has previously explicitly incorporated state law when crafting veterans benefits statutes, and VA has done the same in crafting regulations. *See, e.g.*, 38 U.S.C. § 103(c) (stating that whether a person is married for purposes of VA benefits is defined by "the law of the place where the parties resided at the time of the marriage or the law of the place where the parties resided when the right to benefits accrued."); 38 C.F.R § 1.464 (2014) (defining minor as "a person who has not attained the age of majority specified in the applicable *State law*") (emphasis added); 38 C.F.R. § 3.53(b)(2014) ("State laws *will not* control in determining questions of desertion . . . .") (emphasis added). Thus, the Court concludes that if Congress or VA intended to rely on state-specific definitions of "incarcerated . . . for conviction of a felony" it was well aware of how to draft language to reflect that governing principle. The fact that neither did so in the case of section 5313 and § 3.665(a) is instructive.

Moreover, the Secretary's interpretation is also consistent with Congress's "main stated objective [in] the avoidance of duplicative Government expenditures that would result in a windfall for those convicted of felonies." *Wanless*, 23 Vet.App. at 149. In other words, Congress and VA have concluded that, "if the taxpayers are financing a veteran's incarceration, it is contrary to the public good to also pay him full VA disability benefits." *Id.* at 148. The reduction of benefits under § 3.665(a) is not triggered upon arrest, but only once a formal finding of guilt is made *and* a veteran has been incarcerated for a period of in excess of 60 days. Here, the Secretary has determined that paying full benefits to veterans convicted and incarcerated for at least 61 days would result in a windfall and accordingly has created a safeguard–§ 3.665(a)–to balance the government's interest in avoiding duplicative benefits with the need to ensure that a veteran's benefits are not prematurely reduced. By waiting to reduce a veteran's benefits until the 61st day of incarceration, the Secretary is, in effect, ensuring that the veteran will be "fully supported by tax dollars," for the foreseeable

10

future and that she or he will therefore no longer need VA disability benefits to help "maintain a standard of living." *Id.* This is consistent with the stated purpose of section 5313 and § 3.665(a).

The Secretary's interpretation in determining when benefits should be reduced upon incarceration is persuasive. *See Skidmore*, 323 U.S. at 140. Consequently, to the extent that the statute can be read as ambiguous, the Court concludes that the Secretary's interpretation is entitled to respect. *See Wanless*, 23 Vet.App. at 150-51.

B. Duties to Notify and Assist

Mr. Mulder raises a general assertion of error that VA failed to assist him in obtaining necessary records to adjudicate his claims. Specifically, he references July and September 2007 VA notice letters and contends that "VA never informed [him] that it believed that it would be unable to obtain the necessary records directly." Appellant's Br. at 18. A review of the record reveals that the July and September 2007 VA notice letters both pertained to the reduction of VA compensation payments due to incarceration as well as Mr. Mulder's status as a fugitive felon.

To the extent that Mr. Mulder raises this argument with respect to the issue of his status as a fugitive felon, the Board made a favorable finding on appeal with respect to that matter and determined that Mr. Mulder's status as a "fugitive felon" for a period of time was improper. Accordingly, that matter is not currently before this Court. *See Hibbard v. West*, 13 Vet.App. 546, 549 (2000) (per curiam order) (stating that the Court's jurisdiction is statutorily limited to appeals of final Board decisions that are *adverse* to the claimant).

To the extent that Mr. Mulder raises this argument with respect to the issue of payment reduction as a result of incarceration, the Board explained that VA did not have a duty to assist him "because there is no dispute as to the relevant facts and the law is controlling." R. at 5; *see Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001) (explaining that the Veterans Claims Assistance Act is not applicable where law, not factual evidence, is dispositive); *Smith*, 14 Vet.App. at 231-32 (explaining that the Veterans Claims Assistance Act has no effect on an appeal limited to interpretation of law).

Here, as discussed at length above, section 5313 and § 3.665(a) are controlling as a matter of law, and, as discussed below, there was no dispute as to whether Mr. Mulder's sentence had been overturned, only an indication that he had been resentenced. The Veterans Claims Assistance Act is therefore not for application. *See Dela Cruz*, 15 Vet.App. at 149. The Court concludes that the

11

Board's determination in this regard is not clearly erroneous. *See Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) ("A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."') (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## C. Reinstatement of Benefits

Mr. Mulder next argues that the Board "failed to comply with the duty to infer and adjudicate claims or issues reasonably raised by the record and/or failed to assist [him] in developing his claim for reinstatement of benefits." Appellant's Br. at 24.

First, Mr. Mulder states that he informed VA that his conviction had been overturned and that a claim for reinstatement of his benefits was therefore reasonably raised. In support of his argument, he cites various documents in the record. A review of those records, however, reveals that he informed VA that his *sentence* had been vacated and modified, not that his *conviction* had been overturned. *See* R. at 26, 29, 46, 54, 68, 87-88, 208, 219, 231, 244, 291; *see also Dixon v. Nicholson*, 20 Vet.App. 544, 549 (2006) ( "If a veteran's felony *conviction* is '*overturned* on appeal[,]' VA must restore any withheld disability compensation benefits."(quoting 38 C.F.R. § 3.665(m)); citing *Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002)). Accordingly, the Court is not persuaded by this argument.

Second, the Board acknowledged the modifications of Mr. Mulder's sentence and stated that, "although [his] sentence has been vacated on more than one occasion during the pendency of the claim . . . , the *conviction* itself has not been overturned or vacated[,] and [he] remains incarcerated." R. at 13 (emphasis added). A review of the record does not reveal any evidence that Mr. Mulder's conviction date had changed or that he had been released from prison. Accordingly, the Board had no cause to consider whether reinstatement of benefits was warranted. *See Robinson v. Shinseki*, 557 F.3d 1355, 1361-62 (Fed. Cir. 2009) (holding that the Board is obligated to consider arguments or issues raised by the record, even if not raised by the claimant).

## D. Overpayment

Finally, Mr. Mulder argues that "VA inappropriately asserts that any overpayment occurring as a result of its failure to timely implement its withholding obligation under [38 U.S. C. §] 5313

created a debt." Appellant's Br. at 29. As noted in footnote 1 above, the issue of whether an overpayment of disability compensation benefits payments was properly created was remanded by the Board and is not before the Court at this time.[6] *See* 38 U.S.C. § 7266(a) (stating that the Court reviews only final decisions of the Board); *see also Howard*, 220 F.3d at 1344.

### III. CONCLUSION

Upon consideration of the foregoing, that portion of the March 27, 2012, Board decision finding that the effective date of July 19, 2006, for the reduction of Mr. Mulder's disability compensation benefits payments due to incarceration, was proper is AFFIRMED.

---

[6]To the extent that Mr. Mulder cites a Statement of the Case and asserts error on the part of the regional office, the Court reminds him that it has no jurisdiction over regional office decisions. *Hibbard*, 13 Vet.App. at 549.