# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-3744

TIMOTHY J. URBAN, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veteran's Appeals

(Argued February 7, 2017                                    Decided September 18, 2017)

*Jenna E. Zellmer*, with whom *Emma L. Peterson* and *Zachary M. Stolz*, were on the brief, all of Providence, Rhode Island, for the appellant.

*Mark D. Vichich*, Appellate Attorney, with whom *Leigh A. Bradley* General Counsel; *Mary Anne Flynn*, Chief Counsel; and *Richard A. Daley*, Deputy Chief Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before DAVIS, *Chief Judge,* and PIETSCH and BARTLEY, *Judges.*

BARTLEY, *Judge*: Veteran Timothy J. Urban appeals through counsel a September 15, 2015, Board of Veterans' Appeals (Board) decision that denied entitlement to a disability evaluation higher than 60% for obstructive sleep apnea (OSA) with asthma. Record (R.) at 2-14. This matter was referred to a panel of the Court, with oral argument, to determine whether VA, when assigning a single disability evaluation for coexisting service-connected respiratory conditions under 38 C.F.R. § 4.96(a), is to evaluate severity on the basis of the criteria listed in the diagnostic code (DC) of the predominant respiratory disability alone. For the reasons that follow, we hold that the language of § 4.96(a) is ambiguous as to this issue and will therefore defer to the Secretary's interpretation, that VA is to evaluate coexisting service-connected respiratory conditions covered by § 4.96(a) under the criteria enumerated in the predominant disability's DC. Accordingly, we will affirm the September 2015 Board decision.

## I. FACTS

Mr. Urban served on active duty in the U.S. Coast Guard from August 1988 to August 2007. R. at 1186. While in service, he filed an April 2007 claim for service connection for, inter alia, OSA and asthma. R. at 1224.

In February 2008, a VA regional office (RO) granted service connection for OSA with asthma and assigned an evaluation of 50% under 38 C.F.R. § 4.97, DC 6847 (Sleep Apnea Syndromes). R. at 1175. The veteran sought reconsideration of that decision. R. at 1154-57.

In May 2008, the veteran underwent a VA respiratory examination. The examiner noted that the veteran has dyspnea,[1] asthma, and OSA. R. at 1131. The examiner explained that, without medication, the veteran experiences shortness of breath, uses Albuterol inhalers "almost constantly" for asthma, and requires a continuous positive airway pressure (CPAP) machine for OSA. R. at 1131-33.

A September 2008 RO decision continued the assigned 50% evaluation. R. at 1122. The veteran filed a timely Notice of Disagreement as to that decision and ultimately appealed to the Board. R. at 1118; 1288.

In March 2009, the veteran submitted a statement requesting that his asthma and OSA be evaluated separately. R. at 1108-10. In August 2009, he submitted a letter from a private physician who explained that he treated the veteran's moderate to severe asthma with Symbicort, a combination of steroid and long-lasting beta-agonist. R. at 1310.

In September 2009, the RO issued a Statement of the Case (SOC) continuing the assigned 50% evaluation. R. at 1295-1308. A June 2010 Supplemental SOC awarded the veteran a 60% evaluation for service-connected OSA with asthma under § 4.97, DC 6602 (Asthma, bronchial) because he required continuous use of a CPAP machine and inhalers, to include steroid inhalers. R. at 1263-67. The RO explained that under § 4.96(a), a single evaluation is assigned under the predominant disability DC with elevation to the next higher evaluation where warranted based on the severity of the overall disability. R. at 1266. The RO assigned a 60% evaluation under DC 6602 for asthma because a lower 50% evaluation would be warranted under DC 6847 for OSA. *Id.* The RO stated that the requirements for an evaluation higher than 60% were not met. *Id.*

---

[1] Dyspnea is defined as "breathlessness or shortness of breath; difficult or labored respiration." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 582 (32d ed. 2012).

At a December 2011 Board hearing, the veteran testified that, since he started taking Symbicort, his asthma was better controlled but he still experienced flare-ups that required prednisone use a few times a year. R. at 1003-04. He stated that he attempted to undergo pulmonary function tests (PFTs) but because he was "wheezing and hacking and coughing and . . . couldn't get through a test without coughing," it was invalidated. R. at 1004.

In March 2012, the Board remanded the veteran's claim for further development. R. at 993. Later that month, the veteran underwent respiratory and sleep apnea examinations. R. at 968 (Respiratory–Asthma); 976 (Sleep Apnea). Regarding asthma, the examiner explained that the veteran was currently being treated with Symbicort twice daily and Albuterol less frequently since he began use of Symbicort and reported that the condition required intermittent use of oral or parenteral corticosteroids of four or more courses in the last year and daily use of inhaled medications. R. at 969. She also noted that Mr. Urban had no asthma attacks with episodes of respiratory failure in the past 12 months, but that three to four times a year he had difficulty breathing to the point he could not speak and required the use of parenteral steroids. The veteran was noted to visit a physician less than once a month for exacerbations. R. at 970. A PFT was performed measuring forced expiratory volume in one second to forced vital capacity (FEV-1/FVC) and the results were 73% pre-bronchodilator and 78% post-bronchodilator. R. at 975. The examiner opined that the veteran's asthma affects his quality of life and that he needs to use inhalers for activities such as exercise, mowing the lawn, and walking more than a 1/2 mile. R. at 976. Regarding OSA, the examiner noted that the veteran requires continuous use of a CPAP machine but still has occasional episodes of gasping for air. R. at 977. She opined that the veteran's OSA impacts his ability to work because it causes sleepiness. R. at 978. In May 2014, the veteran underwent a VA sleep apnea examination during which the examiner noted that the veteran required continuous use of a CPAP machine. R. at 926.

In July 2014, the Board denied entitlement to an evaluation higher than 60% for service-connected asthma and OSA. R. at 894-911. Mr. Urban appealed that decision to the Court and, in May 2015, the Court granted a joint motion for partial remand (JMPR) in which the parties stipulated that the Board failed to provide adequate reasons or bases for its determination that the veteran's overall disability picture does not warrant a higher evaluation. R. at 89.

3

In July 2015, Mr. Urban, through current counsel, submitted a letter to the Board arguing that § 4.96 provides that asthma and OSA must be evaluated using the predominant disability DC—DC 6602 for asthma—but that, because his OSA requires the use of a CPAP machine and resulted in sleepiness while working, consideration of those factors should result in his evaluation under DC 6602 being increased to 100%. R. at 30-31.

In September 2015, the Board issued the decision currently on appeal, denying entitlement to an evaluation higher than 60% for coexisting service-connected respiratory disorders of asthma and OSA. R. at 2-14. The Board noted that if rated separately, OSA symptoms would warrant a 50% evaluation under DC 6847 and asthma symptoms would warrant a 60% evaluation under DC 6602. Thus, asthma was considered the predominant disability for § 4.96(a) purposes because it provided the veteran a higher evaluation. The Board also noted that the March 2012 examiner determined that asthma was the predominant respiratory disability. R. at 11-12. The Board stated that, under § 4.96(a), it could not provide separate evaluations for OSA and asthma or combine the evaluations, but rather that a single evaluation would be assigned under the predominant disability DC based on the severity of the overall disability. R. at 11. The Board then considered Mr. Urban's asthma and OSA symptoms and treatment, including use of daily inhalational therapy and intermittent courses of systemic corticosteroids for control of asthma and use of a CPAP machine for control of OSA, and concluded that, when considering his respiratory symptoms as a whole, the severity of his overall respiratory disability did not warrant an elevation of the current 60% under DC 6602 to the next higher evaluation of 100% under DC 6602. R. at 12. This appeal followed.

## II. ANALYSIS

### A. Arguments

Mr. Urban argues that the Board misapplied § 4.96(a) and provided inadequate reasons or bases for its determination that referral for extraschedular consideration was not warranted. Appellant's Brief (Br.) at 9.[2]

---

[2] In his initial brief, the veteran first argued that the Board violated *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), when it determined that Symbicort is not systemic and its usage cannot be considered under § 4.97, DC 6602 (asthma). In his reply brief, the veteran expressly withdrew that argument and confirmed withdrawal of that argument during oral argument. *See* Reply Br. at 1; Oral Argument at 2:03-2:12, *Urban v. Shulkin*, U.S. Vet.App. 15-3744 (oral argument held February 7, 2017), http://www.uscourts.cavc.gov/ oral_arguments_audio.php [hereinafter "Oral Argument"]. Therefore, the Court will not consider that issue further.

4

The veteran and the Secretary disagree as to how to arrive at a single evaluation for coexisting respiratory conditions under § 4.96(a). The veteran argues that the specific criteria for a higher evaluation listed in the predominant disability DC need not be met. Oral Argument at 9:02-10:35; 14:39-15:43. The Secretary responds that the plain language of § 4.96(a) provides that a higher evaluation will be warranted only where the specific criteria and symptoms listed in the predominant disability DC are met. Secretary's Br. at 17-18. Alternatively, the Secretary argues that, if the Court finds the relevant part of § 4.96(a) ambiguous, the Court should defer to his reasonable interpretation, including as currently set forth in the VA Adjudication Procedures Manual M21-1, pt. III, subpt.iv, ch.4, section D(1)(h), because that interpretation reflects the agency's considered view on the matter. *Id*. at 18-22. At oral argument, the Secretary emphasized that VA has consistently applied § 4.96(a) in this manner for many years. Oral Argument at 38:12-40:30.

Regarding referral for extraschedular consideration, Mr. Urban argues that the Board erred when it relied on the fact that he did not meet the criteria for a higher evaluation under DC 6602 to deny extraschedular referral because the availability of a higher schedular evaluation does not preclude extraschedular referral. Additionally, he argues that in its extraschedular analysis the Board failed to account for his use of Symbicort for asthma treatment, as it is not listed in DC 6602. At oral argument, Mr. Urban explained that he was only concerned with extraschedular referral for asthma, not for OSA. Oral argument at 30:00-32:00. In response, the Secretary concedes that, although the Board may have erred in indicating that an extraschedular evaluation was not warranted because a higher schedular evaluation was available, any such error was harmless because the Board overall performed an adequate extraschedular referral assessment. Secretary's Br. at 25-26.

### B. 38 C.F.R. § 4.96(a)

#### 1. Interpretation

The initial question before the Court involves the interpretation of certain language contained in § 4.96(a); this question necessitates examination of the regulation's text. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, (1993) ("The starting point in interpreting a statute [or regulation] is its language."); *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015) ("Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure."). If the plain meaning of § 4.96(a) is clear from its language, that meaning controls and that is the end of the matter. *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006). If, however, the language is ambiguous, the Court must defer to the agency's interpretation

of its regulation unless that interpretation is inconsistent with the language of the regulation or plainly erroneous or does not represent the agency's fair and considered view on the matter. *See Auer v. Robbins*, 519 U.S. 452, 461-62, (1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, (1945); *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006); *Petitti*, 27 Vet.App. at 423. When assessing the meaning of a regulation, words should not be read in isolation but rather read in the context of the regulatory structure and scheme. *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

Section 4.96(a) provides that

[r]atings under [DCs] 6600 through 6817 and 6822 through 6847 will not be combined with each other. . . . A single rating will be assigned under the [DC] which reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation.[3]

The parties do not dispute that the first sentence of § 4.96(a) means that the assignment of separate evaluations for certain respiratory conditions, including asthma and OSA, is prohibited. Additionally, the parties agree that the third sentence is applied in two steps: (1) "[a] single rating will be assigned under the [DC] which reflects the predominant disability," (2) "with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation." 38 C.F.R. § 4.96(a); *see* Appellant's Br. at 9; Secretary's Br. at 14. But the parties disagree as to the meaning of the phrase "where the severity of the overall disability warrants such elevation." 38 C.F.R. § 4.96(a).

The Secretary contends that, after determining which disability is predominant, VA is then required to apply the predominant disability DC, "considering all of the signs and symptoms attributable to either one or both of those disabilities." Secretary's Br. at 17. The Secretary clarifies that "all of the claimant's symptoms attributed to the coexisting respiratory conditions being rated will be considered in assigning the rating, but that the criteria under the applicable [predominant disability] DC . . . will determine the appropriate rating to be assigned." Secretary's Br. at 20. Mr. Urban contends that the phrase under consideration requires VA to look at the symptoms of both disabilities and evaluate them under DC 6602, but essentially argues that his symptoms need not

---

[3] The second sentence of § 4.96(a) concerns DCs that do not apply here and the Court has omitted it from the quote.

match the criteria for a higher evaluation listed in DC 6602 to obtain a higher evaluation under § 4.96(a) and that OSA symptoms not listed in DC 6602 may nevertheless form the basis of a higher evaluation under that DC. Reply Br. at 3-4. He posits that it would be illogical to require that the veteran's OSA symptoms meet the rating criteria for a completely different respiratory disability, i.e., asthma, to obtain a higher evaluation for the coexisting respiratory disorders. *Id.*

The Court concludes that both parties present interpretations consistent with the language of the regulation. The section under consideration does not clarify whether symptoms of the non-predominant disability but not referenced in the predominant disability DC might somehow suffice to elevate the disability evaluation to the next higher level. Given that the relevant language is susceptible to differing interpretations in this regard, and because the plain language does not explicitly confirm how a veteran may obtain the next higher evaluation in cases of coexisting service-connected respiratory disabilities to which § 4.96(a) applies, the Court concludes that the phrase "with elevation to the next higher evaluation" in the third sentence of § 4.96(a) is ambiguous. *See Tropf,* 20 Vet.App. at 321 n.1 (stating that a regulation is ambiguous where "the application of the ordinary meaning of words and rules of construction to the plain language of the regulation fails to answer the question at issue"); *see also Smith*, 451 F.3d at 1350 (holding that a regulation is ambiguous where the language "still leaves the pertinent inquiry unresolved").

Having encountered ambiguity in § 4.96(a), the Court will address the reasonableness of the Secretary's interpretation and determine whether deference to that interpretation is warranted. *See Auer*, 519 U.S. at 461-62; *Mason v. Shinseki*, 26 Vet.App. 1, 6 (2012). "[C]ourts should defer to an agency's interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter." *Mulder v. Gibson*, 27 Vet.App. 10, 16 (2014) (citing *Smith*, 451 F.3d at 1349).

The plain language of the phrase "with elevation to the next higher evaluation" is reasonably interpreted as referring to the next higher evaluation level of the predominant disability DC and is also reasonably interpreted as meaning that, to attain such elevation, the criteria listed in that evaluation level are key to assessing the severity of the overall disability from both respiratory conditions. Thus, the Court concludes that the Secretary's interpretation of the phrase allows VA, having determined the predominant respiratory disability, to assess the overall

symptoms of the coexisting respiratory conditions against the criteria listed in the predominant disability's DC. This interpretation is reasonable and not plainly erroneous. *See Martin v. Occupational Safety and Health Review Commission,* 499 U.S. 144, 150-51 (1991) (holding that an agency interpretation is reasonable "so long as the interpretation 'sensibly conforms to the purpose and the wording of the regulations'" (quoting *Ehlert v. United States*, 402 U.S. 99, 105 (1971))).

In addition to being consistent with the regulation's language, the Secretary's interpretation is consistent with the purpose of the regulation and with VA's regulatory scheme. *See id.* at 150-51. The parties do not dispute that under § 4.96(a) the Secretary provides a single evaluation for certain coexisting respiratory conditions to avoid duplicate compensation payments for the same symptoms or for conditions that manifest in the same way, a practice known as pyramiding. Oral Argument at 21:44-21:55; *see* 38 C.F.R. § 4.14 (2017) ("the evaluation of the same manifestation under different diagnoses [is] to be avoided"). In *Amberman v. Shinseki*, the U.S. Court of Appeals for the Federal Circuit acknowledged that "VA regulations caution against making multiple awards for the same physical impairment simply because that impairment could be labeled in different ways." 570 F.3d 1377, 1380 (Fed. Cir. 2009); *see also Esteban v. Brown*, 6 Vet.App. 259, 262 (1994) (explaining that when considering whether separate evaluations are warranted, "[t]he critical element is that *none* of the symptomatology for any one of these . . . conditions is *duplicative* of or *overlapping* with the symptomatology of the other . . . conditions."). This Court also has recognized that "the rating schedule may not be employed as a vehicle for compensating a claimant twice (or more) for the same symptom[s]" because "such a result would overcompensate the claimant for the actual impairment" suffered. *Brady v. Brown*, 4 Vet.App. 203, 206 (1993).

Since promulgation of § 4.96 in 1964, the language at issue has not changed. Nineteen years prior to the Board decision on appeal, VA modified the respiratory condition DCs to reflect medical advances. *See* 61 Fed. Reg. 46,720 (Sept. 5, 1996). At that time, the agency emphasized that there was no need to overtly specify that § 4.96(a) prohibits pyramiding because the regulation's language, that respiratory conditions evaluated under specified DCs will not be combined with each other, was sufficient to alert VA rating boards to problems of pyramiding when evaluating respiratory conditions. *Id.* at 46,727. A VA Compensation Service document from March 2014 also shows that VA's application of § 4.96(a) concerned anti-pyramiding efforts. VA

8

Compensation and Pension Service Question and Answer Committee, Question and Answer (March 5, 2014).

Given that the regulation prescribes that to avoid pyramiding VA must not separately evaluate the listed respiratory conditions and combine them under 38 C.F.R. § 4.25, as would occur in a conventional evaluation, the Secretary's decision to adhere to the criteria in the predominant DC makes sense. Allowing criteria from other respiratory condition DCs to be considered when assigning an evaluation would seem to conflict with the § 4.96(a) language that prohibits combining evaluations under § 4.25. Thus, the Court finds that the Secretary's interpretation is consistent with the language and purpose of the regulation and with the regulatory scheme. *See Martin*, 449 U.S. at 150-51.

As to whether the Secretary's interpretation is his fair and considered judgment on the matter, Mr. Urban has not presented evidence or argument reflecting any application of § 4.96(a) by the Secretary that is inconsistent with this interpretation nor has he argued that this is not the Secretary's fair and considered view, *see Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table), and the Court likewise has found nothing to that effect. The Court accepts the Secretary's argument that his M21-1 provision as to implementation of § 4.96(a) illustrates his fair and considered view on the matter. In that provision, VA set forth an approach for applying § 4.96(a) that appears consistent with the Secretary's prior pronouncements as to application of § 4.96(a) and with his position in this case. Under his interpretation, all symptoms of the coexisting respiratory conditions are accounted for and the anti-pyramiding quotient remains intact. The Secretary acknowledges that there may be very few instances where symptoms of a non-predominant disability would result in a higher disability rating under the criteria for the predominant disability. However, the opportunity to receive a higher disability rating under § 4.96(a) still balances the goals of adequately compensating veterans and avoiding improper pyramiding. After review of relevant materials and documents provided by the parties, the Court concludes that his posited interpretation is his fair and considered view of the matter.

Having determined that the Secretary's interpretation is consistent with the language of the regulation and not plainly erroneous and represents his fair and considered view of the matter, the Court will defer to the Secretary's interpretation.

9

Mr. Urban does not contest that § 4.96(a), on its face, prohibits asthma and OSA from receiving separate evaluations that are then combined. But the thrust of his argument that the Board's application of § 4.96 is flawed seems to be based on a complaint that symptoms and treatment for OSA are so different from symptoms and treatment for asthma that to evaluate his OSA under DC 6602, the asthma DC, would be irrational. *See* Reply Br. at 4 ("It is illogical to require that the [v]eteran's sleep apnea symptoms meet the rating criteria for a completely different respiratory disability . . . . This is particularly true here: sleep apnea is not measured by the FEV tests that guide the rating for asthma and is not treated with the same therapies as asthma."); Reply Br. at 7 (Mr. Urban alleges that it is problematic that he is service connected for two distinct respiratory disabilities but "receives the *same* compensation as a veteran who is service[ ]connected for *only* asthma at 60 percent."). Essentially, Mr. Urban believes that evaluating OSA and asthma separately would not constitute pyramiding because they are such distinct conditions— and underlying his argument seems to be genuine disagreement with VA's decision to construct the rating schedule to prevent OSA from receiving its own separate evaluation in this instance.[4]

However, "[t]he Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule." 38 U.S.C. § 7252(b). "The Secretary's discretion over the [rating] schedule, including procedures followed and content selected, is insulated from judicial review with one recognized exception limited to constitutional challenges." *Wanner v. Principi*, 370 F.3d 1124, 1131 (Fed. Cir. 2004). Section 4.96(a) clearly prohibits conventional evaluation practices from being applied in this case. 38 C.F.R. § 4.96(a) ("Ratings under DC 6600 through 6817 and 6822 through 6847 will not be combined with each other"). Despite Mr. Urban's discontent with the effect of § 4.96(a) in his case, the Court has no authority to address whether OSA and asthma are so dissimilar that § 4.96(a) unfairly operates to his disadvantage. *See id.*

Although the Court has held that the Secretary's interpretation is permissible and defers to it, the Court will nevertheless address the veteran's remaining arguments. Despite accepting that the intent of § 4.96(a) is to avoid pyramiding of respiratory condition symptoms, Mr. Urban offers

---

[4] When a veteran's symptoms are not accounted for in schedular criteria, VA regulations provide that an extraschedular evaluation may be warranted provided other requirements are met. *See* 38 C.F.R. § 3.321(b) (2017).

an alternative view of that regulation—that its plain language, like § 3.321(b)(1), the extraschedular regulation, was intended to "account[ ] for situations where a veteran's combined multiple service-connected disabilities–in this case multiple respiratory disabilities–result in a greater disability picture than the sum of their parts." Reply Br. at 2-3. As support, the veteran cites *Johnson v. McDonald,* 762 F.3d 1362 (Fed. Cir. 2014), which interpreted § 3.321(b)(1) as requiring VA to assess the collective impact of multiple service-connected disabilities when performing extraschedular evaluations. Appellant's Br. at 3.

The Court rejects the veteran's argument; although it appears that veterans would receive a higher evaluation if their respiratory conditions are elevated under § 4.96(a) rather than being combined under § 4.25, that result would only occur *after* VA determined that "the severity of the overall disability warrants such elevation." The meaning of that phrase is the focus of this analysis. The mere fact that a higher evaluation would result if elevation were determined to be the appropriate course cannot resolve the question of when elevation is appropriate. Therefore, the Court does not accept his view of § 4.96(a).

Additionally, Mr. Urban does not support his argument that the Secretary's interpretation would erroneously require that each of the criteria listed in the next higher evaluation level be met for a veteran to obtain a higher evaluation. Reply Br. at 6-7. The Secretary did not argue in his brief or at oral argument that § 4.96(a) imposes a requirement that all criteria and symptoms listed in the higher evaluation level would need to be met in every case nor did he argue that 38 C.F.R. § 4.7 would not apply here. *See* 38 C.F.R. § 4.7 (2017) ("Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating."). Therefore, the Court finds this argument unpersuasive.

### 2. Application

Every Board decision must include a written statement of reasons or bases for its findings and conclusions on all material issues of fact and law; this statement must be adequate to enable the claimant to understand the precise basis for the Board decision and to facilitate informed review by this Court. 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). The Board must analyze the credibility and probative value of evidence, account for the persuasiveness of evidence, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v.*

11

*Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Remand is appropriate when the Board fails to provide an adequate statement of reasons or bases for its determinations. *Tucker v. West*, 11 Vet.App. 369, 374 (1998).

Mr. Urban's diagnosed respiratory conditions are evaluated under DC 6602 (asthma) and DC 6847 (OSA). DC 6602 provides a 60% evaluation for service-connected asthma for "FEV-1 of 40 to 55[%] predicted, or; an FEV-1/FVC of 40 to 55[%], or; at least monthly visits to a physician for required care of exacerbations, or; intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids." 38 C.F.R. § 4.97, DC 6602. A 100% evaluation is warranted for "FEV-1 less than 40[%] predicted, or; an FEV-1/FVC less than 40[%] or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications. *Id*. Under DC 6847, a 50% evaluation is warranted for service-connected OSA when it "[r]equires use of [a] breathing assistance device such as [a] continuous airway pressure (CPAP) machine." 38 C.F.R. § 4.97, DC 6847. A 100% evaluation is warranted when OSA causes "[c]hronic respiratory failure with carbon dioxide retention or cor pulmonale, or; requires tracheostomy." *Id.*

In the decision on appeal, the Board noted that, if asthma and OSA were evaluated separately, OSA symptoms would warrant a 50% evaluation under DC 6847 and asthma symptoms would warrant a 60% evaluation under DC 6602. Thus, asthma was considered the predominant disability for § 4.96(a) purposes because it provided the veteran a higher evaluation. In reviewing the Board decision and its compliance with § 4.96(a), the Court first notes that it is undisputed that asthma is the veteran's predominant disability and the Court will therefore not address that issue further.

Next, the Board indicated that under § 4.96(a) it could not provide separate evaluations for OSA and asthma, or combine those evaluations, but rather that a single evaluation would be assigned under the predominant disability DC based on the severity of the overall disability. R. at 11. The Board considered Mr. Urban's asthma and OSA symptoms and treatment, including use of daily inhalational therapy and intermittent courses of systemic corticosteroids for control of asthma and use of a CPAP machine for control of OSA.  R. at 12. The Board concluded that, when considering his respiratory symptoms "as a whole," the "severity of his overall respiratory disability" did not warrant elevation of the current 60% under DC 6602 to the next higher evaluation of 100% under DC 6602. *Id.*

The Board applied the language at issue in this case, assigning a single evaluation under the DC that reflects the predominant disability with elevation to the next higher evaluation where

12

the severity of the overall disability warrants such elevation. The Board reiterated that it "must evaluate whether the single rating assigned for these disabilities (currently 60[%] under [DC] 6602, with asthma as the predominant disability) is appropriate, or whether the severity of the <u>overall disability</u> warrants an elevation of the rating to the next higher evaluation." R. at 11. The Board then looked to the criteria listed in the next higher evaluation under DC 6602 and determined that "when considering his respiratory symptoms as a whole, . . . the severity of his overall disability does not warrant an elevation of the current 60[%] rating to the next higher evaluation." R. at 12. This analysis is adequate under § 4.96(a).

The Board also considered whether Mr. Urban's OSA symptoms would meet the criteria in excess of 50% under DC 6847, even though § 4.96(a) did not require the Board to conduct this analysis because OSA is not the veteran's predominant respiratory disability. However, such additional analysis is harmless error. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). The Court recognizes that the Board did not explicitly use some of the terms referenced in the M21-1 provision; however, the Board is not bound by the VA manual provision using that terminology and appears to have nevertheless properly applied § 4.96(a) in a manner sufficient to satisfy its requirements. *See* 38 C.F.R. § 19.5 (2017) ("The Board is not bound by Department manuals, circulars, or similar administrative issues."). Accordingly, the Court discerns no error in the Board's determination in that regard. *See Gilbert*, 1 Vet.App. at 57.

### C. Extraschedular Evaluation

When a claimant or the record raises the issue of extraschedular evaluation, the Board must determine whether to refer the case for extraschedular evaluation. *Thun v. Peake*, 22 Vet.App. 111, 115 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 1366 (Fed. Cir. 2009). Consideration of an extraschedular evaluation involves three steps or elements. *Id.* First, the RO or Board must determine whether the schedular evaluation adequately contemplates the veteran's disability picture. *Id.* "[I]f the [schedular] criteria reasonably describe the claimant's disability level and symptom[s], then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required." *Id.* "[I]f the schedular evaluation does not contemplate the claimant's level of disability and symptom[s] and is

13

found inadequate," then the second inquiry is "whether the claimant's exceptional disability picture exhibits other related factors," *id.* at 116, such as "marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards," 38 C.F.R. § 3.321(b)(1) (2017). If the RO or Board determines that the veteran's disability picture meets these criteria, the third step is to refer the case to the Under Secretary for Benefits or the Compensation Service Director to determine whether an extraschedular evaluation is warranted, "to accord justice." *Thun*, 22 Vet.App. at 116; 38 C.F.R. § 3.321(b)(1).

Here, the Board determined that referral for extraschedular consideration was not warranted because the first *Thun* element was not met as the "diagnostic criteria encompass all symptoms and related functional impairment of the disability shown during the applicable time frame and therefore are not inadequate." R. at 13.

Mr. Urban argues that the Board erred when it failed to consider his use of Symbicort to treat asthma. He argues that Symbicort treatment is not contemplated by DC 6602 because it is "neither a mere inhalational therapy nor an oral or parenteral corticosteroid." Reply Br. at 8.[5] However, to address this question the Court would be required to determine whether Symbicort is contemplated by DC 6602, an argument that Mr. Urban explicitly withdrew.[6] Therefore, the Court will not consider this argument further. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued on appeal and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same). To the extent that Mr. Urban contends that the Board erred when it failed to address whether his use of Symbicort caused marked interference with employment—part of the second *Thun* element—there was no need for the Board to address that element because it had properly determined that the first element was not satisfied. *See Yancy v. McDonald*, 27 Vet.App. 484, 494-95 (2016) (clarifying that, "[i]f either [*Thun*] element is not met, then referral for extraschedular consideration is not appropriate"). Given that the Board properly found that Mr. Urban does not meet the first *Thun* element, the

---

[5] At oral argument, Mr. Urban explained that he was not arguing that an extraschedular evaluation was warranted to account for OSA symptoms not explicitly listed under DC 6602 for asthma, which is his predominant disability; thus, the Court need not address that or related issues any further.

[6] *See supra* note 2.

Court need not address the other *Thun* related argument raised, as any error in that regard is harmless. *See* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

## III. CONCLUSION

After consideration of the parties' briefs and oral arguments, the record on appeal, and the governing law, the September 15, 2015, Board decision is AFFIRMED.